**JUDGE STANTON**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREA WEINSTEIN, on behalf of herself and those
similarly situated,

Plaintiff,

– against –

EBAY, INC., STUBHUB, INC., TICKETMASTER
ENTERTAINMENT, INC., YANKEE GLOBAL
ENTERPRISES LLC AND JOHN DOES 1-50,

Defendants.

ECF Case

Jury Trial Demanded

CLASS ACTION COMPLAINT

Case #:  10-cv-8310 (LLS)(KNF)

The Plaintiff, by and through her undersigned attorneys, alleges upon knowledge as to

herself and her own acts, and as to all other matters upon information and belief, and brings this

Complaint against the above-named Defendant, and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1.      This class action seeks relief for Defendants' violation of Article 25 of New York

State's Arts and Cultural Affairs Law ("ACAL") and New York General Business Law § 349

("GBL § 349").  The Defendants are engaged in the resale of tickets to places of entertainment

located in New York in violation of ACAL Article 25 and GBL § 349 even though they are not

licensed as tickets resellers.  Moreover, the Defendants maintain websites that allows unlicensed

ticket resellers to anonymously sell tickets to places of entertainment located in New York

without disclosing the face value of the tickets or the identity of the ticket seller at the time of

sale. The Plaintiff asserts that the Defendants' activities related to the resale of tickets to places

of entertainment located in New York are prohibited by ACAL Article 25 and GBL § 349.

## JURISDICTION

2.      Diversity subject matter jurisdiction exists over this class-action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2,119 Stat. 4 ("CAFA"), amending 28 USC §1332, at new subsection (d), conferring federal jurisdiction over class actions involving (a) 100 or more members in the proposed Class; (b) at least some members of the proposed class have different citizenship from some Defendants and (c) the claims of the proposed class members exceed the sum or value five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §1332(d)(2) and (6).  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue in this District is proper in that the Defendants transact business here and the conduct complained of occurred here.

## PARTIES

4.      The Plaintiff, Andrea Weinstein, is a natural person residing in Bronx County, New York.

5.      The Defendant, eBay, Inc. ("eBay") is a Delaware corporation licensed to do business in the New York.  eBay's principal place of business is located at 2145 Hamilton Ave., San Jose, California 95125.  eBay's registered agent in New York is c/o National Registered Agents, Inc., 875 Avenue of the Americas, Suite 501, New York, New York  10001.

6.      For purposes of this Complaint, the term "eBay" is intended to include eBay's officers, directors, employees and affiliates.

7.      The Defendant, StubHub, Inc. ("StubHub"), is a Delaware corporation licensed to business in New York.  StubHub's principal place of business is located at 2145 Hamilton Ave.,

San Jose, California 95125. StubHub's registered agent in New York is c/o National Registered Agents, Inc., 875 Avenue of the Americas, Suite 501, New York, New York 10001.

8. For purposes of this Complaint, the term "StubHub" is intended to include StubHub's officers, directors, employees and affiliates.

9. The Defendant, Ticketmaster Entertainment, Inc. ("Ticketmaster"), is a Delaware corporation licensed to do business in the State of New York. Ticketmaster's principal place of business is located at 8800 West Sunset Blvd., West Hollywood California 90069. Ticketmaster's registered agent in New York is c/o National Registered Agents, Inc., 875 Avenue of the Americas, Suite 501, New York, New York 10001.

10. For purposes of this Complaint, the term "Ticketmaster" is intended to include Ticketmaster's officers, directors, employees and affiliates.

11. The Defendant, Yankee Global Enterprises LLC (the "Yankees"), is a Delaware limited liability company licensed to do business in the State of New York.

12. John Does 1-50 are unknown persons and/or entities that are officers, directors and employees of the Defendants identified above.

## FACTUAL ALLEGATIONS

### *New York Law Regarding Tickets to Places of Entertainment Located in New York.*

13. The State of New York first enacted legislation governing ticket[1] sales to places of entertainment[2] located in New York in 1922 as Article 10-B of the General Business Law ("GBL") (L.1922, c.590).[3]

---

[1] Currently, the term "Ticket" is defined in ACAL § 25.03(9) as "any evidence of the right of entry to a place of entertainment."

[2] Currently, the term "Entertainment" is defined in ACAL § 25.03(1) as "all forms of entertainment including, but not limited to, theatrical or operatic performances …"

14.     The 1922 law prevented a ticket reseller[4] from marking up a ticket more than 50 cents.

15.     The purpose of the 1922 law was to eliminate "gross profiteering" by "ticket scalpers" and to safeguard the public against "fraud, extortion, exorbitant rates and similar abuses".

16.     In 1983, GBL Article 26 was repealed and reenacted as Article 25 of the Arts and Cultural Affairs Law ("ACAL").

17.     In 1991, the New York legislature repealed ACAL, Article 25, entitled, "Theatre Tickets" and reenacted many of the same provisions, some significant new provisions and a revised penalty scheme, as a new Article 25, entitled "Tickets to Places of Entertainment."  (L. 1991 c. 704).

18.     The intent of the new Article 25 was to subject out-of-state tickets resellers to the provisions of Article 25 and included a definition of "Maximum Premium Price" in ACAL § 25.03(4) which was defined as the greater of $5 or 10% of the "Established Price", which ACAL § 25.07 defined as the face value of the ticket.

19.     Additionally, ACAL § 25.13 was amended to provide that "[n]o person, firm or corporation shall resell or engage in the business of reselling any tickets to a place of entertainment … without having first procured a license … from the commissioner of licenses of the political subdivision in which such person intends to conduct such business."

---

[3]     Effective September 1, 1974, GBL Article 10-B was redesignated as GBL Article 10-C and was subsequently redesignated as GBL Article 26.

[4]     Currently, the term "Resale" is defined in ACAL § 25.03(8) as:

[A]ny sale of a ticket for entrance to a place of entertainment located within the boundries of the state of New York other than a sale by the operator or the operator's agent who is expressly authorized to make first sales of such tickets.

20.     However, the 1991 reenactments defined the term "resale" to include sales "where either the buyer or seller is located in this state" (ACAL § 25.03(9)), which provided some ticket resellers with the argument that they were not subject to ACAL Article 25 because it only applied to ticket resellers who were licensed in New York.

### *The 2001 ACAL Article 25 Amendments*.

21.     In 2001, the New York Legislature amended ACAL Article 25 and increased the Maximum Premium Price to the greater of $5 or 20% of the established price.  (L. 2001, c. 56) (the "2001 Amendments").

22.     The 2001 Amendments also clarified that ticket resellers were subject to the provisions of ACAL Article 25 regardless of whether they were licensed as ticket resellers in New York.

### *The 2005 ACAL Amendments*.

23.     In 2005, the New York Legislature began its crusade to repeal the Maximum Premium Price provisions of ACAL Article 25 which had been almost universally ignored by ticket resellers.

24.     Additionally, the internet had radically transformed the ticket industry, with internet based ticket resellers growing at a rapid pace.

25.     On February 23, 2005, New York Assemblyman Joseph D. Morelle ("Morelle") sponsored A.5454-C which sought to amend the provisions of ACAL Article 25.

26.     On April 18, 2005, New York Senator Nicholas A. Spano ("Spano") sponsored S.5110-A which also sought to amend the provisions of ACAL Article 25.

27.     Thereafter, A.5454-C was substituted for S.5110-A as both bills were identical.

28.     The legislative findings contained in S.5110-A/A.5454-C amended ACAL §
25.01 to recognize that "many ticket resellers advertise and sell tickets to places of entertainment
within the boundaries of New York often from locations outside the state, without adhering the
provisions" of ACAL Article 25.

29.     The legislative findings contained in S.5110-A/A.5454-C also amended ACAL §
25.01 to specifically state that "[t]he legislature objects to any claim that businesses domiciled
outside New York state are exempted from this statute when selling tickets to events occurring in
New York state, regardless of the territories of origin of both the buyer and seller."

30.     S.5110-A/A.5454-C sought to radically amend the definition of Maximum
Premium Price contained in ACAL § 25.03(4) by removing the cap on tickets to places of
entertainment with a seating capacity of 6,000 or more.

31.     S.5110-A/A.5454-C amended ACAL § 25.07 to require ticket resellers to provide
certain refund guarantees if an event was canceled or if the ticket reseller sold a counterfeit
ticket.

32.     Finally, S.5110-A/A.5454-C sought to amend ACAL §§ 25.13 and 25.23 by
subjecting operators of internet websites to licensure and requiring those websites to disclose the
face value of tickets at the time of sale as well as a hyperlink to the guarantees in ACAL § 25.07.

33.     More specifically, S.5110-A/A.5454-C sought to amend ACAL § 25.13 as
follows:

> Licensing of ticket resellers. No person, firm or corporation shall resell or engage
> in the business of reselling any tickets to a place of entertainment or operate an
> internet website or any other electronic service that provides a mechanism for two
> or more parties to participate in a resale transaction or that facilitates resale
> transactions by the means of an auction, or own, conduct or maintain any office,
> branch office, bureau, agency or sub-agency for such business without having
> first procured a license or certificate for each location  at which business will be
> conducted from  the commissioner of licenses of  the political subdivision in

which such person intends to conduct such business. <u>Any operator or manager of a website that serves as a platform to facilitate resale of tickets solely by way of a competitive bidding  process between third parties to places of entertainment shall be exempt  from the licensing requirements of this section</u>…

34.     The revisions to ACAL § 25.13 contained in S.5110-A/A.5454-C created an exemption for internet auction sites such as eBay (the "eBay Exemption"), who merely provided a "platform to facilitate resale of tickets solely by way of a competitive bidding process …"

35.     On May 31, 2005, Assemblyman Morelle sponsored A.8561 and on June 1, 2005, Senator Spano sponsored S.5542, both bills being identical.

36.     The only significant amendment sought by Spano and Morelle in S.5542/A.8561 was the subtle change to ACAL § 25.13 as follows:

> Licensing of ticket resellers.  No person, firm or corporation shall resell or engage in the business of reselling any tickets to a place of entertainment or operate an internet website or any other electronic service that provides a mechanism for two or more parties to participate in a resale transaction or that facilitates resale transactions by the means of an auction, or own, conduct or maintain any office, branch office, bureau, agency or sub-agency for such business without having first procured a license or certificate for each location  at which business will be conducted from the commissioner of licenses of  the political subdivision in which such person intends to conduct such business.  Any operator or manager of a website that serves as a platform to facilitate resale [of tickets solely by way of a competitive bidding process between third parties to places of entertainment], <u>or resale by way of a competitive bidding process, solely between third parties and does not in any other manner engage in resales of tickets to places of entertainment shall be exempt from the licensing requirements of this section</u>.

37.     Simply put, S.5542/A.8561 created an exemption from licensure for internet auction sites such as eBay ***and other internet sites that facilitate resale*** such as StubHub (the "StubHub Exemption").

38.     On June 2, S.5110-A/A.5454-C, the bill that only contained the eBay exemption in ACAL § 25.13 was delivered to Governor George E. Pataki ("Governor Pataki") for signature.

39.     On June 3, 2005, Senator Spano and Assemblyman Morelle sent a joint letter to Counsel to Governor Pataki, Richard Platkin ("Platkin") urging Governor Pataki to sign S.5110-A/A.5454-C.

40.     On June 6, 2005, the Senate and the Assembly passed S.5542/A.8561 and delivered S.5542/A.8561, containing both the eBay Exemption and the StubHub Exemption to Governor Pataki for signature.

41.     On June 8, 2005, Acting General Counsel for the New York Department of State, Robert P. Leslie, Esq., sent a memorandum to Platkin regarding S.5110-A and S.5542.

42.     It appears that Mr. Leslie did not recognize the subtle language differences between S.5110-A/A.5454-C (the eBay Exemption) and S.5542/A.8561 (the eBay and StubHub Exemptions) as he wrote in his memorandum that:

> [t]he proposed chapter amendment (Senate 5542) would provide an exemption from licensure requirements for operators of internet auction sites. However, the exemption from licensure for internet auction sites to be added (Senate 5110-A page 4, lines 13-29) or Senate 5542, page 2, lines 10-15) would provide that anyone who operates an internet auction site would be exempt from licensure. This would create a potential loophole, since a person who is engaged in ticket re-selling on any scale, no matter how large, could set up an auction site, no matter how small, and claim exemption from licensure. Suggested revision to beginning of this provision:
>
> > Any person who operates or manages a website that serves as a platform to facilitate resale of tickets to places of entertainment solely by way of competitive bidding between third parties and who does not in any other manner engage in the resale or resale auction of tickets to places of entertainment shall be exempt from the licensing requirements of this section …

43.     On June 10, 2005, the New York State Consumer Protection Board ("CPB") submitted comments to Mr. Platkin regarding S.5110-A/A.5454-C. Apparently, the CPB was either unaware of the existence of S.5542/A.8561, or the CPB also did not recognize the subtle

language differences between S.5110-A/A.5454-C (the eBay Exemption) and S.5542/A.8561 (the eBay and StubHub Exemptions)

44.    In the CPB's comments the CPB makes the following comment about S.5110-A/A.5454-C:

> This bill amends §25.13 of the ACAL which deals with the licensing of ticket resellers to include any person or entity that operates an internet web site or any other electronic service that provides a mechanism for two or more parties to participate in a resale transaction or that facilitates resale transactions by means of an auction. This section of the bill does clarify that any operator of a web site that serves as a platform to facilitate the resale of tickets solely by way of a competitive bidding process between third parties (i.e. E-bay) to places of entertainment are exempt from the licensing requirements …

45.    The CPB's comments make no mention of S.5542/A.8561 or the StubHub Exemption contained therein.

46.    The CPB's comments do make it clear that the CPB thought that S.5110-A/A.5454-C would place "most consumers at a disadvantage" and that the "bill does not improve the free market system." Therefore, it was the CPB's position that the bill would deprive most consumers of "exposure to the arts."

47.    In an undated Memorandum, the lobbyist firm of Bogdan, Lasky & Kopley, LLC urged Pataki to sign S.5110-A/A.5454-C on behalf of its client eBay.[5]

48.    In an undated Memorandum, the lobbyist firm of Crane & Vacco, LLC urged Pataki to sign S.5110-A/A.5454-C on behalf of its client StubHub.

---

[5]    Bogdan, Lasky & Kopley states on its website blklobby.com:

> Bogdan, Lasky & Kopley ranks among the top ten lobbying firms in New York State, representing several Fortune 500 corporations, numerous trade organizations, associations and not-for-profits. The firm's founders virtually created the modern lobbying industry in Albany. Although we enjoy our successful status, we take more pride in our ability to achieve results than in our public profile.

49.     At the time, former New York Attorney General Dennis C. Vacco, who was elected at the same time as Pataki in 1994, was a partner in Crane & Vacco.

50.     Based upon information and belief, Crane & Vacco has been investigated and fined by the State Commission on Public Integrity regarding their lobbying activities in regards to matters pending before the New York Legislature.

51.     On June 14, 2005, Governor Pataki signed S.5110-A/A.5454-C containing the eBay Exemption into law (L. 2005, c. 106).

52.     On June 14, 2005, Governor Pataki signed S.5542/A.8561 containing both the eBay Exemption and the StubHub Exemption into law (L. 2005, c. 107).

53.     Pataki's same day signing of S.5110-A/A.5454-C and S.5542/A8561 as Chapter 106 and Chapter 107 was apparently so confusing that Elizabeth Block, an Assistant Attorney General of the State of New York, who writes the Supplemental Practice Commentary published on Westlaw, wrote the following about the 2005 amendments to ACAL Article 25:

> The 2005 legislation recognized for the first time "operators of internet websites or any other electronic service that provide a mechanism for two or more parties to participate in a resale transaction or that facilitate resale transactions by means of an auction" and required them to be similarly licensed (ACAL, § 23.13(1) [stat]). However, the same section provides an exemption for the licensing requirement for "any operator or manager of a website that served as a platform to facilitate resale of tickets *solely* by way of a competitive bidding process between third parties" (this provision seems to apply particularly to eBay) provides that such …

54.     Only a few days after Governor Pataki enacted Chapters 106 and 107, on June 17, 2005, Senator Spano sponsored S.5771 and Assemblyman Morelle sponsored A.8991 which sought to once again amend the definition of Maximum Premium Price contained in ACAL § 25.03(4) to reinstitute a price cap on venues with a seating capacity of more than 6,000 at 45% of the Established Price.

55.     S.5771/A.8891 was delivered to Governor Pataki on June 26, 2005 and Governor Pataki signed S.5771/A.8891 into law on June 30, 2005 (L. 2005, c. 134).

***The 2007 ACAL Amendments***

56.     Based upon information and belief, after the 2005 ACAL Amendments, the operators of websites such as StubHub saw their revenues explode as they were able to provide a platform to allow unlicensed ticket resellers to anonymously sell tickets without complying with ACAL Article 25.

57.     Based upon information and belief, eBay's revenue growth from ticket sales did not compare to StubHub's growth because eBay's website discloses the online identity of sellers and their prior sales transaction history on eBay, making ticket brokers more readily identifiable.

58.     Based upon information and belief, the operators of eBay realized that they could not compete in the ticket resale market unless they were able to provide a platform to allow unlicensed ticket resellers to anonymously sell tickets without complying with ACAL Article 25.

59.     Based upon information and belief, the operators of eBay also realized that they could not change the format of eBay to allow anonymous ticket resales as that would have subjected eBay to scrutiny by consumers and government regulators.

60.     Based upon information and belief, the operators of eBay decided that the most profitable way for them to compete in the ticket resale business was to acquire a company that provided a platform to allow ticket resellers to anonymously sell tickets.

61.     On January 10, 2007, eBay announced in a press release that they were acquiring StubHub for $310 million.

62.     Based upon information and belief, in 2006, StubHub had annual revenues of close to $100 million, and earnings of about $10 million.

63.     Less than thirty days later, on February 13, 2007, eBay announced in a press release that its acquisition of StubHub had been completed.

64.     Based upon information and belief, eBay and StubHub had been in acquisition negotiations well in advance of the January 10, 2007 press release.

65.     Before the ink had time to try on the StubHub acquisition documents, the New York Legislature was at it again, introducing S.3857-A on March 19, 2007 and A.7526-A on April 18, 2007, to completely repeal the Maximum Premium Price provisions of Article 25 which had existed in some form since ticket resale legislation was first enacted in 1922.

66.     S.3857-A/A7526-A was delivered to Governor Eliot Spitzer on May 31, 2007 and was signed into law on the same day (L. 2007, c. 61).

***Plaintiff Purchases Tickets to a Yankees Game***.

67.     On or about June 14, 2010, the Plaintiff sought to purchase six tickets to the July 25, 2010 game between the Kansas City Royals and the New York Yankees at Yankee Stadium in the Bronx.

68.     The Plaintiff went to the URL Yankees.com and through a hyperlink was led to the URL StubHub.com.

69.     The Plaintiff ultimately purchased the Tickets for the Grandstand Outfield, Section 426, Row 5 and paid $33 for each ticket (the "Tickets"). In addition, the Plaintiff paid a service fee of $19.80 and a eDelivery service fee of $4.95

70.     In total, the Plaintiff paid $222.75 for the Tickets.

71.     The printable Tickets received from StubHub does not disclose their established price or final auction price as required by ACAL § 25.07. (A copy of one of the Tickets is attached as Exhibit "A").

72.     Based upon information and belief, the established price for Grandstand Outfield Section 426, Row 5 for the 2010 Yankees season was $20 per ticket.

73.     The Plaintiff agreed to pay $33 for each Ticket in large part due to the fact that the URL Yankees.com directed her to StubHub and StubHub did not disclose the $20 established price of the Tickets or the identity of the seller at the time of sale.

### StubHub is "the World's Largest Ticket Market Place" to Illegally Sell Tickets.

74.     Based upon information and belief, eBay's acquisition of StubHub has been quite profitable as eBay now owns and operates "the world's largest ticket marketplace" for unlicensed ticket resellers to anonymously sell tickets to places of entertainment located in New York in violation of ACAL Article 25.

75.     eBay acquired StubHub so that eBay could maintain an anonymous platform for ticket resellers to sell tickets to places of entertainment in New York.

76.     eBay knowingly operates StubHub in violation of ACAL Article 25 and they essentially admit as much in their SEC filings, including this risk factor included in eBay's Form 10-Q, dated October 21, 2010:

> Our tickets business is subject to regulatory, competitive, and other risks that could harm this business.
>
> Our tickets business, which includes our StubHub business, is subject to numerous risks. Many jurisdictions have laws and regulations covering the resale of event tickets. Some jurisdictions prohibit the resale of event tickets at prices above the face value of the tickets or at all, or highly regulate the resale of tickets, and new laws and regulations or changes to existing laws and regulations imposing these or other restrictions may be adopted that could limit or inhibit our ability to operate, or our users' ability to continue to use, our tickets business. <u>Regulatory agencies or courts may claim or hold that we are responsible for ensuring that our users comply with these laws and regulations or that we or our users are either subject to licensure or prohibited from reselling event tickets in their jurisdictions.</u>  (emphasis added).

13

77.     Based upon information and belief, the largest beneficiary of the 2005 and 2007 ACAL amendments has been StubHub and its owner, eBay., the same two companies who lobbied for the ACAL revisions despite the objections of New York's Consumer Protection Board.

78.     Because of the ACAL amendments, eBay was able to create "the world's largest ticket marketplace" for unlicensed ticket resellers to anonymously sell tickets to places of entertainment located in New York in violation of ACAL Article 25.

79.     Based upon information and belief, eBay operates StubHub as an anonymous marketplace because eBay does not want consumers to know the established price for tickets at the time of sale because providing that that information would likely lead to lower ticket prices and lower revenues.

80.     Based upon information and belief, eBay operates StubHub as an anonymous marketplace because eBay does not want consumers to know the identity of ticket sellers at the time of sale because providing that that information would likely lead to lower ticket prices and lower revenues.

81.     Because eBay uses StubHub to allow persons to anonymously sell tickets to places of entertainment located in New York, eBay, StubHub and its operators and employees are able to sell tickets that they acquire based on their inside connections with operators at a substantial markup on the secondary ticket market.

82.     Based upon information and belief, eBay and StubHub are ticket resellers and are required to be licensed pursuant to ACAL § 25.13 and are required to comply with ACAL Article 25 because they sell tickets that they, their operators and employees own on the secondary ticket market.

14

83.     Based upon information and belief, eBay and StubHub are not licensed pursuant to ACAL § 25.13.

## CLASS ALLEGATIONS

84.     The Plaintiff brings this action as a class action on behalf of herself and all others similarly situated for the purpose of asserting the claims alleged in this Complaint on a common basis.  The Plaintiff's proposed class (hereinafter the "Class") is defined under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 23(b)(2) and (3), and she proposes to act as a representative of the following class comprised of:

> **All persons, exclusive of the Defendants and their employees, who purchased tickets to a place of entertainment located in New York on StubHub.com from November 3, 2007 through such time in the future when the effects of the Defendant's violation of ACAL Article 25, as alleged herein have ceased.**

85.     The Plaintiff's proposed subclass (hereinafter the "Subclass") is defined under Fed. R. Civ. P. 23(b)(2) and (3), and she proposes to act as a representative of the following Subclass comprised of:

> **All persons, exclusive of the Defendants and their employees, who purchased tickets to a New York Yankees game on StubHub.com from November 3, 2007 through such time in the future when the effects of the Defendant's violation of ACAL Article 25, as alleged herein have ceased.**

86.     The Plaintiff does not know the exact size or identities of members of the proposed Class or Subclass, since such information is in the exclusive control of the Defendants. The Plaintiff believes that the Class and Subclass encompass millions of individuals whose identities can be readily ascertained from Defendants' books and records.  Thus, the proposed Class is so numerous that joinder of all members is impracticable.

87.     Based on the Defendants' revenue, the Plaintiff believes the amount in controversy exceeds $5 million.

88.     All members of the Class have been subject to and affected by the same conduct. The claims are based on the same violations of ACAL Article 25 and GBL § 349.

89.     All members of the Subclass have been subject to and affected by the same conduct.

90.     The claims are based on the same violations of ACAL Article 25 and GBL § 349.

91.     There are questions of law and fact that are common to the Class and the Subclass and predominate over any questions affecting only individual members of the Class and Subclass.  These questions include, but are not limited to the following:

a) Whether eBay and/or StubHub is engaged in the resale of tickets to places of entertainment located in New York;

b) Whether eBay and/or StubHub are required to be licensed pursuant to ACAL § 25.13;

c) Whether eBay and/or StubHub are engaged in the resale of tickets to places of entertainments located in New York in violation of ACAL § 25.09;

d) Whether StubHub's failure to disclose the established price to places of entertainment located in New York at the time of sale violates ACAL § 25.23;

e) Whether eBay and/or StubHub are aiding and abetting the violation of ACAL Article 25 by knowingly allowing unlicensed ticket resellers to anonymously resell tickets to places of entertainment located in New York;

f) Whether eBay, StubHub, Ticketmaster and/or the Yankees conduct described herein constitutes a deceptive act and practice in violation of GBL § 349;

g) Whether StubHub is required to disclose the established price of tickets at the time of sale;

h) Whether StubHub is required to disclose the identity of a ticket seller at the time of sale;

i) Whether the Yankees, StubHub and/or Ticketmaster are required to print or endorse the established price or final auction price on the face of each ticket;

92.     The claims of the individual named Plaintiff is typical of the claims of the Class and Subclass and do not conflict with the interests of any other members of the class in that both the Plaintiff and the other members of the Class and Subclass were subjected to the same conduct.

93.     The individual named Plaintiff will fairly and adequately represent the interests of the Class and the Subclass.  She is committed to the vigorous prosecution of the Class and the Subclass' claims and has retained attorneys who are qualified to pursue this litigation and has experience in class actions – in particular, consumer protection actions.

94.     A class action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

### COUNT I
### (VIOLATION OF ACAL §§ 25.13 and 25.23)
### (against eBay and StubHub)

95.     The Plaintiff restates and reiterates herein all previous paragraphs.

96.     ACAL § 25.33 titled "Private right of action" provides:

Notwithstanding any right of action granted to any governmental body pursuant to this chapter, any person who has been injured by reason of a violation of this article may bring an action in his or her own name to enjoin such unlawful act, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions. The court may award reasonable attorney's fees to a prevailing plaintiff.

97.     ACAL § 25.13 requires a "ticket reseller" to be licensed by the Secretary of State.

98.     Based upon information and belief, eBay, StubHub and John Does 1-50 are engaged in the resale of tickets to places of entertainment located in New York and are required to be licensed pursuant to ACAL § 25.13.

99.     Based upon information and belief, eBay, StubHub and John Does 1-50 are not licensed as required by ACAL § 25.13

100.    ACAL § 23.23 requires a ticket reseller to post the face value or a hyperlink to the face value on their website if they are doing business through the use of the internet.

101.    StubHub.com does not provide the face value or a hyperlink to the face value on its website, a violation of ACAL § 23.23

102.    As a result of the Defendants' conduct, members of the Class have been injured because they are forced to pay higher ticket prices to places of entertainment and members of the Class are not provided with the information required pursuant to ACAL Article 25 such as the face value of the ticket or the identity of the seller.

103.    ACAL § 25.33 provides the Plaintiff and the members of the Class with a private right of action against eBay and StubHub for actual and/or statutory damages, attorneys' fees and costs and well as injunctive relief.

## COUNT II
## (VIOLATION OF GBL § 349)
### (against eBay and StubHub)

104.    The Plaintiff restates and reiterates herein all previous paragraphs.

105.    GBL § 349 prohibits deceptive acts or practices in the conduct of any business trade or commerce or in the furnishing of any service in New York State.

106.    eBay, StubHub and John Does 1-50's conduct violates GBL § 349 in that they knowingly allow unlicensed ticket resellers to anonymously sell tickets to places of entertainment located in New York.

107.    eBay, StubHub and John Does 1-50's conduct violates GBL § 349 in that they knowingly allow licensed and/or unlicensed ticket resellers to sell tickets to places of

entertainment located in New York without disclosing the face value of the tickets at the time of purchase.

108.   eBay and StubHub's conduct violates GBL § 349 in that they anonymously allow persons to sell tickets to places of entertainment located in New York.

109.   The Defendants' conduct described above is deceptive and misleading in a material respect and was directed at the public at large.

110.   Defendants' acts and practices described above are likely to mislead a reasonable consumer acting reasonably under the circumstances.

111.   ACAL § 25.09 titled "Ticket speculators" provides:

    1.    Any person who in violation of [the licensing requirements of] section 25.13 of this article unlawfully resells or offers to resell or solicits the purchase of any ticket to any place of entertainment shall be guilty of ticket speculation.

    2.    Any person, firm or corporation which in violation of [the licensing requirements of] section 25.13 of this article unlawfully resells, offers to resell, or purchases with the intent to resell five or more tickets to any place of entertainment shall be guilty of aggravated ticket speculation.

112.   As a result of the Defendants' deceptive and misleading acts, members of the Class have been injured because they are forced to pay higher ticket prices to places of entertainment and members of the Class are not provided with the information required pursuant to ACAL Article 25 such as the face value of the ticket or the identity of the seller.

113.   ACAL § 25.09 states that:

Any person, firm or corporation which is convicted of violating subdivision two of section 25.09 of this article shall be guilty of a misdemeanor punishable by a term of imprisonment not to exceed one year or by a fine not to exceed seven hundred fifty dollars on the first conviction; one thousand five hundred dollars on the second conviction; and two thousand dollars, on each subsequent conviction or by both such fine and imprisonment.

114.    Because Defendants' conduct described above is criminalized in ACAL § 25.35, the Defendant's conduct a *per se* violation of GBL § 349.

115.    As a result, the Plaintiff and the members of the Class are entitled to maintain an action against eBay and StubHub for actual and/or statutory damages, attorneys' fees and costs and well as injunctive relief.

### COUNT III
### *(VIOLATION OF ACAL § 25.07)*
### *(against Yankees, StubHub and Ticketmaster)*

116.    The Plaintiff restates and reiterates herein all previous paragraphs.

117.    ACAL § 25.07 titled "Ticket Prices" provides:

Every operator of a place of entertainment shall, if a price be charged for admission thereto, print or endorse on the face of each such ticket the established price, or the final auction price if such ticket was sold or resold by auction through the operator or its agent.

118.    ACAL § 25.35(3) provides:

[a]ny person, firm or corporation which is convicted of knowingly violating subdivision one of section 25.07 or section 25.13 or section 25.15 of this article shall be guilty of a misdemeanor punishable by a term of imprisonment not to exceed one hundred eighty days or by a fine not to exceed five hundred dollars on the first conviction; one thousand dollars on the second conviction; and two thousand dollars on each subsequent conviction or by both such fine and imprisonment.

119.    The Tickets sold by the Yankees or its agent(s) to the Plaintiff do not have the established price or final auction price printed or endorsed on the face of the Tickets.

120.    Failure to print the established price or final auction price on a ticket to a place of entertainment location in New York is criminal conduct and such conduct is made a misdemeanor by ACAL § 25.35(3) which subjects the Yankees, StubHub and/or Ticketmaster to a term of imprisonment not to exceed 180 days or to a fine not to exceed five hundred dollars on

the first conviction; one thousand dollars on the second conviction; and two thousand dollars on each subsequent conviction or by both such fine and imprisonment.

121.    ACAL § 25.33 provides the Plaintiff and the members of the Class with a private right of action against the Yankees, StubHub and Ticketmaster to require those Defendants to print or endorse on the face of each ticket sold the established price or final auction of each ticket sold as well as actual and/or statutory damages, attorneys' fees and costs.

## COUNT IV
### *(VIOLATION OF GBL § 349)*
### *(against Yankees, StubHub and Ticketmaster)*

122.    The Plaintiff restates and reiterates herein all previous paragraphs.

123.    GBL § 349 prohibits deceptive acts or practices in the conduct of any business trade or commerce or in the furnishing of any service in New York State.

124.    The Yankees, StubHub and/or Ticketmaster are knowingly violating the provisions of ACAL § 25.07 by failing to print the established price of tickets on the tickets in order to mislead the Plaintiff and members of the Subclass about the face value of tickets to Yankees games.

125.    The Defendants' conduct described above is deceptive and misleading in a material respect and was directed at the public at large.

126.    As a result of the Defendants' deceptive and misleading acts, the Plaintiff and members of the Subclass pay higher ticket prices to Yankees' games because they are unaware of the true cost of tickets.

127.    Defendants' acts and practices described above are likely to mislead a reasonable consumer acting reasonably under the circumstances.

128.   The fact that Defendants' conduct described above is criminalized in ACAL §
25.35(3) makes the Defendants' conduct a *per se* violation of GBL § 349.

129.   GBL § 349 provides the Plaintiff and the members of the Subclass with a private
right of action against the Yankees, StubHub and Ticketmaster to require those Defendants to
print or endorse on the face of each ticket sold the established price or final auction of each ticket
sold as well as actual and/or statutory damages, attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment against the
Defendants as follows:

a.   Declaring that eBay and StubHub are engaged in the resale of tickets to places of
entertainment located in New York and are required to be licensed pursuant to
ACAL § 25.13;

b.   Permanently enjoining the eBay and StubHub from reselling tickets to a place of
entertainment located in New York without obtaining the license required under
ACAL § 25.13;

c.   Permanently enjoining eBay and StubHub from reselling tickets to a place of
entertainment located in New York without disclosing the identity of the seller at
the time of the sale;

d.   Permanently enjoining eBay and StubHub from reselling tickets to a place of
entertainment located in New York without disclosing the face value of the tickets
at the time of the sale;

e.   Ordering eBay and StubHub to adequately disclose the identity of each seller of
tickets to a place of entertainment located in New York prior to the consummation
of the sale;

f.   Ordering eBay and StubHub to adequately disclose the face value of each ticket to
a place of entertainment located in the New York prior to the consummation of
the sale;

g.   Ordering the Yankees, StubHub and/or Ticketmaster to print or endorse on the
face of each ticket sold to a place of entertainment located in New York, the
established price, or the final auction price of each ticket.

h.   Awarding the Plaintiff and the Class and Subclass statutory, actual and punitive
damages for injuries caused by Defendants' deceptive acts and practices;

i.      Awarding the Class and Subclass reasonable attorneys' fees and costs; and

j.      Granting such other and further relief as the Court may deem just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff hereby demands

a trial by jury.


Dated: New York, New York
        November 3, 2010

                                Respectfully submitted,

                                RANDALL S. NEWMAN, P.C.

                        By:     _Randall S. Newman_____
                                Randall S. Newman, Esq. (RN7862)
                                40 Wall Street, 61st Floor
                                New York, NY  10005
                                Tel: (212) 797-3737

                                *Attorney for Plaintiff,*
                                *Andrea Weinstein*

# EXHIBIT A

This is your ticket. Present this entire page at the event.



452753531670

- THIS IS YOUR TICKET -

WORLD SERIES
CHAMPIONS
2009

2010   2010   2010   2010
- THIS IS YOUR TICKET -

| SECTION | ROW | SEAT |
|---------|-----|------|
| 426 | 5 | 16 |

**EVENT**
Kansas City Royals at New York Yankees Tickets
Sunday July 25, 2010 at 1:00p.m.
Yankee Stadium

YANKEES SEASON TICKET PLANS
ON SALE NOW



CATCH THE 27-TIME WORLD
CHAMPION YANKEES IN 2010!

## TRANSACTION DETAILS

Name:                                    Andrea Weinstein
Payment Method:
Credit Card Number:
StubHub Customer Number:
StubHub Confirmation Number:     33296713



yankees.com

IS YOUR ONE-STOP SHOP
FOR YANKEES TICKETS

Log On today  »



MLB.com

## Important Instructions:

- The barcode only allows one entry per person.
- Unauthorized duplication or sale of this ticket may prevent your admittance to the event

| SECTION: 426 | ROW: 5 | SEAT: 16 |
|--------------|--------|---------|

452753531670

Keep this ticket in a safe place as you would money or regular tickets. Ticketmaster is not responsible for any inconvenience caused by unauthorized duplication. In the event that duplicate copies appear, the facility reserves the right to refuse entry to all ticketholders and may credit the original purchase the face value which will constitute full remuneration. The event date and time is subject to change without notice.