# EXHIBIT 21

Westlaw. Case 1:10-cv-08310-JFK   Document 23-3   Filed 03/17/11   Page 2 of 10

Page 1

Not Reported in F.Supp.2d, 2008 WL 2324111 (S.D.N.Y.), Fed. Sec. L. Rep. P 94,752
(Cite as: 2008 WL 2324111 (S.D.N.Y.))

H
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re MERRILL LYNCH & CO. RESEARCH REPORTS SECURITIES LITIGATION.
This Case Relates To:
Nicholas L. Vale, Plaintiff,
v.
Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc. and Henry Blodget, Defendants.

Nos. 02 MDL 1484, 02 CIV 9690(JFK).
June 4, 2008.

Nicholas L. Vale, New York, NY, pro se.

Skadden, Arps, Slate, Meagher & Flomm, LLP, Jay Kasner, Esq., Scott Musoff, Esq., Joanne Gaboriault, Esq., of Counsel, New York, NY, for the Defendants.

## OPINION AND ORDER

JOHN F. KEENAN, District Judge.

*1 Plaintiff *pro se* Nicholas Vale ("Vale"), a purchaser of stock in the Internet-based companies, Internet Capital Group, Inc. ("ICGE"), and B2B Internet HOLDRs ("B2B"), brought this action against defendants Merrill Lynch & Co., Inc. ("Merrill Lynch"), Merrill Lynch's broker-dealer affiliate, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF & S"), and Henry Blodget, a former Merrill Lynch executive and research analyst ("Blodget") (collectively, the "Defendants"), alleging that the Defendants issued research reports on ICGE and B2B that bestowed falsely positive ratings and price projections on the companies' publicly-traded stock, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, and Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5"), 17 C.F.R. § 240.10b-5.

Vale seeks to amend his Complaint, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Defendants oppose the proposed amendment as futile and move to dismiss the Complaint for its failure to state a claim under Section 10(b) and Rule 10b-5, on the grounds that the Complaint fails to plead loss causation and fails to plead fraud with requisite particularity. Further, Defendants assert that the proposed amendment is futile, and the original Complaint must be dismissed, because Vale is bound by an arbitration agreement he entered into with Merrill Lynch that requires him to arbitrate all past, present, or future controversies he has with the Defendants.

Because the Complaint, in both its present and proposed amended form, fails to plead that the alleged false statements made by the defendants were the cause of Vale's financial losses, Vale's motion to amend his Complaint is denied as futile and the Complaint is dismissed with prejudice.

## BACKGROUND

*Procedural History*

The present Complaint was filed on December 6, 2002. Vale was among numerous plaintiffs who brought suit against the Defendants in 2002 and 2003, asserting violations of federal securities laws, on the ground that the Defendants issued fraudulent research reports on the Internet-based companies in which the plaintiffs had invested. The background of the actions brought against the Defendants and consolidated under this Multi-District Litigation has been set forth in several prior decisions of this Court, *see, e.g., Ventura v. Merrill Lynch & Co. (In re Merrill Lynch & Co. Research Reports Sec. Litig.),* Nos. 02 MDL 1484, 07 Civ. 6677(JFK), 2008 U.S. Dist. LEXIS 37993, 2008 WL 2019680 (S.D.N.Y. May 8, 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 246 F.R.D. 156 (S.D.N.Y.2007). In brief:

In April 2002, the New York State Attorney General's Office (the "NYAG") filed an affidavit

detailing its investigation into conflicts of interest between Merrill Lynch's Internet Group-the research analysts, headed by Blodget, who covered Internet-based securities-and its investment banking division. Specifically, the affidavit alleged that the Defendants regularly published misleading and/or false recommendations on Internet-based stocks in order to generate underwriting business for Merrill Lynch from the companies whose stocks were the subject of the falsely positive reports. The affidavit was offered in support of an application before the New York state courts for an order requiring Merrill Lynch employees to turn over documents and give testimony in the Attorney General's continuing investigation into whether defendants violated New York state law. In May 2002, Merrill Lynch entered into a settlement with the NYAG, in which the company agreed to pay a cash fine of $100 million.

*2 The NYAG's highly publicized investigation into Merrill Lynch's conduct and the subsequent settlement led to the filing of numerous class action complaints against the present Defendants in courts throughout the country, on behalf of purchasers of approximately two dozen Internet-based securities, including ICGE and B2B, that had been the subject of the allegedly fraudulent Merrill Lynch research reports (the "Internet Cases"). In October 2002, the Judicial Panel on Multidistrict Litigation transferred the cases to Judge Pollack for pre-trial proceedings, under the caption *In re Merrill Lynch Research Reports Securities Litigation*, No. 02 MDL 1484.

In December 2002, Judge Pollack issued an order directing that the cases be consolidated according to the security that was the subject of each complaint. Regarding the actions brought by purchasers of ICGE, the order provided that those actions were to be consolidated under a lead case entitled *Internet Capital Group, Inc. Research Reports Securities Litigation*, No. 02 Civ. 3050. Regarding the actions brought by purchasers of B2B, the order provided that those actions were to be consolidated under a lead case entitled *B2B HOLDRs Securities Litigation*, No. 02 Civ. 5002. In March 2003, the lead plaintiffs filed consolidated amended complaints in each of the actions.

In April 2003, the Defendants filed motions to dismiss the complaints in cases brought by direct purchasers of common stock in the Internet companies 24/7 Real Media and Interliant. Judge Pollack stayed all proceedings apart from the motions to dismiss in the 24/7 Real Media and Interliant actions, which were designated by Judge Pollack as "test cases." See *In re Merrill Lynch 24/7 Real Media Inc. Research Reports Sec. Litig.*, No. 02 Civ. 3210(MP), and *In re Merrill Lynch Interliant Inc. Research Reports Sec. Litig.*, No. 02 Civ. 3221(MP) (the "test cases"). On June 30, 2003, Judge Pollack dismissed the complaints in the test cases with prejudice, on the ground, among others, that the plaintiffs had failed adequately to plead loss causation. See *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F.Supp.2d 351 (S.D.N.Y.2003).[FN1] On January 20, 2005, the Second Circuit affirmed Judge Pollack's dismissal on the ground that the plaintiffs failed to plead loss causation. See *Lentell v. Merrill Lynch*, 396 F.3d 161, 178 (2d Cir.2005), *cert. denied*, 546 U.S. 935, 126 S.Ct. 421, 163 L.Ed.2d 321 (2005) (*"Lentell"*).

> FN1. On October 6, 2004, following Judge Pollack's death, the Judicial Panel for Multidistrict Litigation reassigned the cases consolidated in *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, to this Court.

Subsequently, the lead plaintiffs in the Internet Cases entered into settlement negotiations with the Defendants. In January 2007, the parties entered into a stipulation setting forth the key terms of a proposed settlement. On September 5, 2007, this Court approved the final settlement of the Internet Cases. See *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 65372 (S.D.N.Y. Sept. 5, 2007). Vale elected to participate in the settlement of the B2B ac-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion-thus extinguishing any claims against the defendants based on his purchase of B2B's stock-but opted out of the settlement of the ICGE action. Accordingly, he seeks to amend his original Complaint to excise allegations and claims relating to B2B stock.

*Facts*<sup>FN2</sup>

> FN2. Because, as discussed below, I deem Defendants' application to dismiss Vale's Complaint for failure to state a claim as a motion to dismiss arising under Rule 12(b)(6), I consider the following materials in setting forth the background of the case: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F.Supp.2d at 356-57. (citations omitted).

***3** Vale alleges that, from August 30, 1999 through September 25, 2000 (the "Period"), the Defendants issued twenty-five research reports relating to ICGE that provided falsely positive price projections and "buy" and "accumulate" ratings for ICGE's stock even though Blodget, the primary author of the reports, did not believe that the stock deserved such ratings. Merrill Lynch initiated coverage of ICGE on August 30, 1999. ICGE was in essence an Internet holding company that invested primarily in private Internet-based companies. Beginning with its initial report and throughout the Period, Merrill Lynch maintained a rating of "D-2-1" for ICGE's stock. As this Court recently explained in *Ventura*, 2008 U.S. Dist. LEXIS 37993, 2008 WL 2019680, the reports that Defendants issued on all securities, including ICGE, employed the following rating system:

> Each of the research reports followed Merrill Lynch's uniform stock rating system and provided a rating for [ICGE] that consisted of a letter, followed by four numbers, in the form "x-# -# -# ." A code key was included in each of the research reports. The initial letter (either A, B, C, or D) represented Merrill Lynch's assessment of the "Investment Risk Rating" associated with the stock. [ICGE], like all of the Internet-based stocks covered by Merrill Lynch, received a "D" rating, which indicated a "high" level of investment risk and was the highest risk rating that the company gave.

> The pair of numbers that followed the Investment Risk Rating signified the stock's "Appreciation Potential Rating." The first number indicated the stock's appreciation potential over the intermediate term (from 0-12 months). The second number indicated the stock's long-term appreciation potential (more than twelve months). The numbers signified the following estimates: 1-BUY; 2-ACCUMULATE; 3-NEUTRAL; 4-REDUCE; and 5-SELL. In all of the research reports relating to [ICGE] that were issued during the relevant period, [ICGE] was given a rating of "2-1," or "ACCUMULATE/BUY." According to Merrill Lynch, companies given a "2-1" rating had "good growth prospects in a promising sector" or were dominant sector leader[s]"; were on a "clear path to profitability within the next 12-18 months"; had sufficient cash "to reach profitability"; and had "a high likelihood of appreciating more than 20% in 1-2 years."

> *Id.* at *11-12.

Vale does not claim that any of the financial data, contained in the research reports was false.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:10-cv-08310-JFK   Document 23-3   Filed 03/17/11   Page 5 of 10

Page 4
Not Reported in F.Supp.2d, 2008 WL 2324111 (S.D.N.Y.), Fed. Sec. L. Rep. P 94,752
(Cite as: 2008 WL 2324111 (S.D.N.Y.))

Rather, Vale claims that Blodget issued falsely rosy share price projections and equally baseless recommendations to investors to "accumulate" and/or "buy" ICGE stock when, in fact, he privately believed that ICGE did not merit such ratings. Vale alleges that "as a result of Blodget's highly publicized reputation as an analyst of Internet companies, the defendants' positive reports on ICGE and their 'Accumulate/Buy' recommendations on ICGE significantly and artificially inflated the price of ICGE common stock throughout the Period." (Compl.¶ 3.) The fraud was motivated, Vale claims, by a conflict of interest between Merrill Lynch's banking and underwriting operations. Specifically, Vale alleges that the Defendants issued falsely positive research reports that did not reflect their true opinion of ICGE in order to inflate the company's stock price and thereby induce ICGE to bestow investment banking business on Merrill Lynch. Blodget and other analysts, in turn, were motivated to issue false reports by their desire to obtain hefty bonuses, which were keyed to the amount of investment banking business the analysts brought to Merrill Lynch as a result of their issuance of the disingenuously optimistic research reports. Vale alleges that, because the stock recommendations were designed to attract investment banking business, rather than reflect the analysts' true opinion about the investment value of CMGI, the Defendants never issued any recommendation for intermediate or long term appreciation potential that was below a "3", and rarely issued recommendations below "1" or "2." Thus, "although represented to be a five-point system, internally it became a three-point system." (Compl. ¶ 16 .) The Complaint asserts that the opinions and recommendations given by Blodget and other analysts were not objective, as represented, but were highly biased and motivated largely, if not solely, by the desire artificially to inflate ICGE's stock price and obtain underwriting business from ICGE.

*4 The Complaint alleges that Vale relied upon the Defendants' falsely optimistic reports when he purchased 2799 shares of ICGE's stock in September 1999 for approximately $300,000, after Defendants initiated their coverage; and that he suffered financial losses, amounting to $70,398.47, when ICGE's share price subsequently-plummeted and Vale sold his holdings in August 2000. Vale asserts that "[b]ut for Henry Blodget's reputation as analyst, plaintiff would not have invested in ICGE." (Compl. ¶ 53 .)

### DISCUSSION
*(I) Legal Standard*

Leave to amend a pleading should be freely granted when justice so requires. Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Dluhos v. Floating & Abandoned Vessel,* 162 F.3d 63, 69 (2d Cir.1998). "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." *Lee v. Regal Cruises, Ltd.,* 916 F.Supp. 300, 303 (S.D.N.Y.1996). A proposed amended complaint is futile when it fails to state a claim. *See Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("Although Fed.R.Civ.P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied."). "The Proposed Amended Complaint may therefore be scrutinized as if defendant's objections to the amendments constituted a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Journal Publ'g Co. v. Am. Home Assurance Co.,* 771 F.Supp. 632, 635 (S.D.N.Y.1991). The district court has "broad" discretion in ruling on a motion to amend. *Local 802, Associated Musicians v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998).

Here, Defendants claim that Vale's claims should be dismissed as futile because the Complaint, in both its original and proposed amended forms, fails adequately to plead loss causation and fails to plead fraud with requisite particularity. Further, Defendants claim that Vale's claims are fore-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:10-cv-08310-JFK   Document 23-3   Filed 03/17/11   Page 6 of 10

Page 5
Not Reported in F.Supp.2d, 2008 WL 2324111 (S.D.N.Y.), Fed. Sec. L. Rep. P 94,752
(Cite as: 2008 WL 2324111 (S.D.N.Y.))

closed by the arbitration agreement he entered into with Merrill Lynch. In addition to opposing Vale's motion for leave to amend as futile, Defendants seek dismissal of the original Complaint on the same grounds that they oppose the proposed amendment. Although Defendants have not expressly characterized their application to dismiss the Complaint as a motion arising under Rule 12(b)(6), for the sake of efficiency, the Court will treat it as such. *See Zarycki v. Mount Sinai/NYU Health,* No. 02 Civ. 6236, 2005 U.S. Dist. LEXIS 28104, at *15 n. 3, 2005 WL 2977568 (S.D.N.Y. Nov. 4, 2005) ("[I]t would be inefficient for the Court to require defendants to file a separate Rule 12(b)(6) motion addressed to those claims contained in the original complaint given that a Rule 15(a) futility argument is governed by the same standard as Rule 12(b)(6).").

In considering a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). In so doing, the court need not "accord legal conclusions, deductions or opinions couched as factual allegations a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007) (quotations and alterations in original omitted). The issue on a Rule 12(b)(6) motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claim. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A court should "read the complaint generously and draw reasonable inferences in favor of the pleader." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). To survive a motion to dismiss, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).

*(II) Section 10(b) & Rule 10b-5*

*5 To slate a claim under Section 10(b) and Rule 10b-5 for fraudulent misrepresentations, plaintiffs must allege that defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Lentell,* 396 F.3d at 172

Vale's proposed amendment must be denied as futile, and the original Complaint dismissed eith prejudice, because Vale has failed adequately to plead loss causation.

*Loss Causation*

A securities-fraud plaintiff "must prove both transaction and loss causation." *Lentell,* 396 F.3d at 172 (internal quotations and citations omitted).[FN3] "Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell,* 396 F.3d at 172. (internal quotation marks omitted). The concept of loss causation is related to the doctrine of proximate cause. *See Merrill Lynch & Co. v. Allegheny Energy,* 500 F.3d 171, 183 (2d Cir.2007). A defendant's alleged "misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor." *Lentell,* 396 F.3d at 173. To establish loss causation, the loss must be foreseeable and the loss must be caused by the "materialization of the concealed risk." *Id.* "[A] plaintiff must allege ... that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Id.* Thus, "the Second Circuit has made clear that in order '[t]o plead loss causation, the complaints must allege facts that support an inference that [defendants'] misstatements and omissions concealed the circumstances that bear upon

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud.'" *In re Initial Pub. Offering Secs. Litig.,* No. 21 MC 92(SAS), 2008 U.S. Dist. LEXIS 24148, at *24 (S.D.N.Y. Mar. 26, 2008) (quoting *Lentell,* 396 F.3d at 175).

> FN3. "Transaction causation only requires allegations that 'but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction.'" *ATSI Communs.,* 493 F.3d at 106 (quoting *Lentell,* 396 F.3d at 172). Vale has adequately pleaded transaction causation.

A plaintiff who cannot plead that a defendant's misstatements or omissions were the direct cause of his financial losses may nevertheless successfully allege loss causation by (i) "alleging that the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted" or (ii) "alleg[ing] that a defendant's misstatements or omissions concealed a risk that later materialized to cause the plaintiff's loss." *In re AOL Time Warner, Inc. Sec. Litig.,* 503 F.Supp.2d 666, 677 (S.D.N.Y.2007) (citing *Lentell,* 396 F.3d at 173, 175, 176)

*6 The Court of Appeals' decision in *Lentell* is fatal to Vale's attempts to plead loss causation. In *Lentell,* the Second Circuit affirmed the dismissal of securities fraud claims brought by direct purchasers of stock in Internet companies who, like Vale, claimed that the Defendants' falsely optimistic research reports caused the prices of the stocks at issue to become artificially inflated and resulted in the plaintiffs' losses. The Second Circuit found that there was "no allegation that the market reacted negatively to a corrective disclosure regarding the falsity of Merrill's 'buy' and 'accumulate' recommendations and no allegation that Merrill misstated or omitted risks that did lead to the loss." *Lentell,* 396 F.3d at 175. Plaintiffs' failure to plead either corrective disclosure or materialization of a concealed risk was "fatal under Second Circuit precedent." *Id.* Although the *Lentell* court acknowledged that the plaintiffs adequately pleaded that the alleged fraud caused the investors to acquire the stocks at artificially inflated prices, the court found that these facts at most could "establish transaction causation; but they do not provide the necessary causal link between Merrill's fraud and plaintiffs' losses." *Id; see also In re Initial Pub. Offering Secs. Litig.,* 2008 U.S. Dist. LEXIS 24148, at *26-27 (finding that loss causation is not adequately pleaded where "plaintiffs allege merely that they purchased securities at artificially inflated prices") (citing *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). The *Lentell* court also observed that, despite the plaintiffs' allegations that Defendants had issued false and misleading "buy" and "accumulate" recommendations, the research reports at issue were replete with warnings about the high-risk nature of the investment, and "the risk of price volatility-and hence, the risk of implosion-is apparent on the face of every report challenged in the underlying complaints." *Lentell,* 396 F.3d at 176. The Second Circuit concluded as follows:

> [W]here (as here) substantial indicia of the risk that materialized are unambiguously apparent on the face of the disclosures alleged to conceal the very same risk, a plaintiff must allege (i) facts sufficient to support an inference that it was defendant's fraud-rather than other salient factors-that proximately caused plaintiff's loss; or (ii) facts sufficient to apportion the losses between the disclosed and concealed portions of the risk that ultimately destroyed an investment.

*Id.* at 177.

Like the plaintiffs in *Lentell,* Vale alleges only that he relied on Defendants' misrepresentations and that the purported fraud caused the share price of ICGE to become artificially inflated. Vale has not alleged that his losses resulted either from a corrective disclosure or from the materialization of a specific risk that the Defendants' concealed. There

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

is no allegation, for example, that the decline in ICGE's stock price occurred when the market learned that Blodget and other of the Defendants' analysts did not truly believe the positive stock ratings and share price projections they had bestowed on ICGE. Nor does Vale allege that the Defendants knowingly concealed from their reports specific risks about ICGE's operations or performance which, when revealed, resulted in a stock price drop.

*7 Similarly, here-as in *Lentell*-although "the defendant[s'] normative 'buy' or 'accumulate' stock recommendations were insincere," they "were accompanied by the underlying, accurate financial data, so that the plaintiffs could review the financial information and evaluate the risk for themselves." *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir.2007) (citing *Lentell*, 396 F.3d at 177). As noted, Vale does not allege that Defendants' research reports misstated ICGE's financial data. In addition, "the risk of price volatility-and hence, the risk of implosion-is apparent on the face of every report challenged in the underlying complaint [ ]." *Lentell*, 396 F.3d at 176. For example, the Defendants bestowed a "D" rating on CMGI, which signified the highest level of investment risk under Merrill Lynch's uniform rating system. ICGE received the "D" rating in each of the research reports at issue. The key code for the Defendants' rating system was included in each of the research reports and thus was readily available to Vale and all other potential investors in CMGI. *See id.* ("Since the Investment Opinions are decoded in the margin of every 'Bulletin' and 'Comment' cited in the underlying complaints, the high-risk nature of the investment in 24/7 Media and Interliant was available to the marketplace.").

Moreover, apart from the risk denoted by the "D" rating, the research reports contained explicit warnings about the high degree of risk attendant in purchasing ICGE's stock. For example, Defendants' initial research report on ICGE, published on August 30, 1999-on which Vale claims to have relied in purchasing the stock-warns that "[p]resently valuing ICGE is difficult and probably an exercise in futility" and that the stock "is likely to be highly volatile." (Decl. of Scott Musoff in Support of Defs. Opp. To Pl. Mot. To Amend the Compl. ("Musoff Decl."), Ex. 4 at ICGE 00005.) The August 30, 1999 report concludes with a section headed by the single, bold-printed word "Risks," in which "Internet stocks in general, VerticalNet [a major holding of ICGE], and the health of the Internet IPO market," were identified as factors that collectively could contribute to ICGE's loss in value. ( *Id.* at ICGE 00006.) These warnings were repeated in numerous subsequent reports that were issued during the Period. Such express warnings, contained on the face of the reports that form the basis for Vale's claim of fraud, preclude him from pleading that the Defendants fraudulently concealed the risk that the company was not a good investment. *See, e.g., Lentell*, 396 F.3d at 176; *Ventura*, 2008 U.S. Dist. LEXIS 37993, at *37, 2008 WL 2019680.

Finally, Vale's failure to allege that his losses were due to the purported fraud, rather than to the market-wide collapse of the Internet sector, also requires dismissal of his Complaint. The "logical link between [an] inflated share purchase price" resulting from alleged misstatements "and any later economic loss is not invariably strong" because "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions or other events." *Dura*, 544 U.S. at 342-43. To prove loss causation, plaintiffs must distinguish the alleged fraud from the "tangle of [other] factors" that affect a stock's price. *Id.* at 343. Although plaintiffs "need not quantify the fraud-related loss, they must 'ascribe some rough proportion of the whole loss to [the alleged] misstatements.' " *In re Omnicom Group, Inc. Sec. Litig.*, No. 02 Civ. 4483(WHP), 541 F.Supp.2d 546, 2008 U.S. Dist. LEXIS 6033, at *20, 2008 WL 243788 (S.D.N.Y. Jan.29, 2008) (quoting *Lattanzio*, 476 F.3d at 158). Thus, a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

plaintiff cannot plead loss causation where the complaint fails to "allege [ ] facts to show that [defendant's] misstatements, among others ... that were much more consequential and numerous, were the proximate cause of plaintiffs' loss ... ." *Lattanzio,* 476 F.3d at 158. In particular, where-as here- "the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases," and a plaintiff's claim fails when "it has not adequately ple[ ]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events." *Lentell,* 396 F.3d at 174.

*8 Although the Complaint alleges that ICGE's stock price plummeted from a "high of $212 on December 22, 1999" to a price of $12.38 on October 5, 2000, (Compl.¶ 40), there are no allegations to show that the steep decline was caused by the alleged fraud, rather than by the collapse of the market for Internet-based securities. *See Ventura,* 2008 U.S. Dist. LEXIS 37993, at *40, 2008 WL 2019680 ("Here, as in *Lentell,* the Complaint does not assert facts that distinguish between the alleged fraud and the market-wide collapse of Internet stocks as the cause of [plaintiff's] losses."). Further, the Complaint does not "address the fact that, during the 'relevant time period' while Defendants were issuing favorable 'buy' and 'accumulate' recommendations and rosy price target projections, [ICGE's] stock lost nearly all of its value." *Id.* at *42; *see also 60223 Trust v. Goldman, Sachs & Co.,* 540 F.Supp.2d 449, No. 03 Civ. 3548, 2007 U.S. Dist. LEXIS 89646, at *37 (S.D.N.Y. Dec. 4, 2007) (finding that complaint's failure to account "for gradual loss of value ... during the time when the alleged false and misleading comments of an optimistic nature were being issued" was fatal to attempt to plead loss causation). The present Complaint contains no allegations that attempt to explain why ICGE's precipitous stock price decline during the Period when Defendants were issuing the falsely optimistic projections was due to the alleged fraud, rather than to the well-documented bursting of the Internet bubble.

In sum, Vale has failed to allege facts showing that his losses were proximately caused by the Defendants' fraud, and his claim under Section 10(b) and Rule 10b-5 must be dismissed.[FN4] Further, I find that the Complaint must be dismissed with prejudice. Vale's proposed Amended Complaint merely omits all references to B2B, because any claim arising from Vale's purchase of B2B has been extinguished by his participation in the Court-approved settlement of that action. Thus, the proposed amendment does nothing to cure the Complaint's fatal deficiency in pleading loss causation. Any further attempt at amendment would likewise prove futile. The same reasons recently elucidated by this Court for denial of leave to re-plead in *Ventura* apply equally in this case:

> FN4. Because Vale has failed to plead loss causation, I need not decide whether the Complaint alleges facts with sufficient particularity to satisfy the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act (the "PSLRA"), or whether Vale is foreclosed by a prior arbitration agreement from bringing this action against the Defendants.

[I]t is evident that any amendment would be futile, in light of the information contained in the research reports which provide the basis for [plaintiff's] claims. As discussed, the reports show on their face that the Defendants repeatedly and clearly warned potential investors that buying [ICGE's] stock was a high-risk proposition, and that the investment risk that purportedly materialized was not, in fact, a concealed risk. No amendment to the pleadings can evade the fact that the reports plainly disclosed the high risk of investing in [ICGE] In addition, no subsequent amendment can alter the fact that [ICGE] had lost most of its value by the time the alleged materialization of the risk occurred. As discussed, these facts are fatal to [Vale's] attempts to plead loss

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

causation and cannot be overcome by amendment to the Complaint.

*9 *Id.* at *48. Accordingly, the Complaint is dismissed with prejudice.

*Compliance with Rule 11(b)*

Pursuant to its statutory obligation under the PSLRA, this Court finds that the parties and counsel in this matter have complied with Rule 11(b). *See* 15 U. S.C. § 78u-4(c)(1); *Rombach*, 355 F.3d at 178 ("The PSLRA mandates that, at the end of any private securities action, the district court must 'include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b).' ") (quoting 15 U.S.C. § 78u-4(c)(1)); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F.Supp.2d 365, 382 (S.D.N.Y.2007).

## CONCLUSION

For the foregoing reasons, Vale's motion to amend is DENIED and the Complaint is DISMISSED in its entirety with prejudice. The Clerk of the Court is respectfully directed to close this case and remove it from the docket of the Court.

**SO ORDERED.**

S.D.N.Y.,2008.
In re Merrill Lynch & Co. Research Reports Securities Litigation
Not Reported in F.Supp.2d, 2008 WL 2324111 (S.D.N.Y.), Fed. Sec. L. Rep. P 94,752

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.