UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
ANDREA WEINSTEIN,
on behalf of herself and those similarly situated,

                      Plaintiff,

   v.                                    Case No. 10-CV-8310 (JFK)

EBAY INC., et al.,

                      Defendants.
-------------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1
ARGUMENT ...................................................................................................................................2
I.     STUBHUB IS NOT SUBJECT TO THE ACAL ..............................................................2
     A.     ACAL § 25.07 Is Inapplicable ................................................................................2
     B.     The ACAL Does Not Require Disclosure Of Resellers' Identities ........................4
     C.     The ACAL Does Not Require StubHub To Disclose The Face Amount ................5
II.     COUNT II FAILS TO STATE A CLAIM UNDER GBL § 349 .........................................6
     A.     Without An ACAL Violation, The GBL § 349 Claim Fails ....................................6
     B.     Plaintiff Failed To Allege Deception ......................................................................6
     C.     Plaintiff Failed To Allege Injury ..............................................................................8
III.     EBAY IS NOT LIABLE FOR THE CHALLENGED CONDUCT ....................................9
IV.     THE YANKEES ARE NOT LIABLE FOR THE CHALLENGED CONDUCT ..............10
CONCLUSION ..............................................................................................................................10

## FEDERAL CASES

Page

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 540 (2007)......................................................................................................9

*Chiste v. Hotels.com LP*,
    No. 08 Civ. 10676 (CM), 2010 WL 4630317 (S.D.N.Y. Nov. 15, 2010) ...................9

*Conley v. Gibson*,
    355 U.S. 41 (1957).........................................................................................................9

*United States v. Bestfoods*,
    524 U.S. 51 (1998).......................................................................................................10

## STATE CASES

*Brady v. Posse*,
    No. SCR 1550/06, 14 Misc.2d 1232(A), 2007 WL 519273
    (N.Y. City Civ. Ct., Richmond Cty. Feb. 16, 2007) ...................................................8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (N.Y. 1995) .......................................................................................6, 7

*Townley v. Emerson Electric Co.*,
    178 Misc.2d 740 (N.Y. Sup. Ct., Monroe Cty. 1998)...............................................10

## FEDERAL STATUTE

47 U.S.C. § 230.......................................................................................................................5

## STATE STATUTES

N.Y. ARTS & CULTURAL AFF. LAW § 25................................................................2, 6, 8

N.Y. ARTS & CULTURAL AFF. LAW § 25.01 ...................................................................3

N.Y. ARTS & CULTURAL AFF. LAW § 25.07 ............................................................1, 2, 3

N.Y. ARTS & CULTURAL AFF. LAW § 25.09 ...................................................................4

N.Y. ARTS & CULTURAL AFF. LAW § 25.13 ............................................................1, 4, 5

N.Y. ARTS & CULTURAL AFF. LAW § 25.23 ...............................................................1, 5

## TABLE OF AUTHORITIES (Cont.)

**Page**

N.Y. Gen. Bus. Law § 349 ...................................................................................................1, 6, 7, 8

N.Y. Penal Law § 20 ................................................................................................................4, 5

N.Y. Penal Law § 20.25 ..............................................................................................................10

### SECONDARY SOURCE

Hon. Lorraine Cortés-Vázquez, Secretary of State, New York,
    Report on Ticket Reselling and Article 25
        of The Arts & Cultural Affairs Law (Feb. 1, 2010) ......................................................3

## PRELIMINARY STATEMENT[1]

In her opposition brief, Plaintiff narrowed her claim to three alleged violations of the ACAL – §§§ 25.07, 25.13, and 25.23 – which sections on their face apply only to operators of a place of entertainment or licensees. StubHub is neither. Thus, it is permitted to run its business as it sees fit unbridled by the requirements of the ACAL. As there is no violation of the ACAL provisions, and since Plaintiff does not dispute that her GBL § 349 claim is based entirely on her claimed violations of the ACAL, the Amended Complaint should be dismissed in its entirety.

The GBL § 349 claim also fails for lack of deception or injury. Plaintiff does not dispute that she knew all of the facts she is complaining about in this case *before* she purchased her tickets through StubHub, yet she proceeded with the transaction anyways. Under these circumstances, there cannot be deception as a matter of law. As for injury, Plaintiff claims lack of information, which is not a cognizable injury under GBL § 349, and a speculative claim of higher resale ticket prices. Nowhere does Plaintiff plead, other than in conclusory fashion, how providing the allegedly omitted information would have resulted in her paying less, especially since she freely paid the market price to the reseller.

Plaintiff's effort to hold eBay and the Yankees liable also is baseless. Under well-settled principles of corporate law, eBay cannot be held liable for StubHub's conduct simply because it is its parent. And Plaintiff barely mentions the Yankees in her opposition brief, which is not surprising since the Yankees were not the reseller of any of the disputed tickets.

In the end, Plaintiff's brief confirms that her case depends on interpretations of New York law that are not supported by the statute or any judicial decisions. Although Plaintiff

---

[1] Capitalized words and terms have the same meaning as in Defendants' opening brief ("Mem."). "Ex." or "Exs." references are to the exhibits attached to the Declaration of Eric S. Hochstadt, submitted therewith. Plaintiff's opposition brief is referred to as "Opp'n." "Reply Ex." or "Reply Exs." references are to the new exhibits cited herein and attached to the Reply Declaration of Eric S. Hochstadt, submitted herewith.

clearly is dissatisfied with the current legal and regulatory framework in New York for the secondary ticket marketplace, as well as StubHub's business model, her remedy is to lobby the Legislature to change the ACAL, not file a meritless lawsuit against perceived deep pockets.

## ARGUMENT

I.   **STUBHUB IS NOT SUBJECT TO THE ACAL**

   A.   **ACAL § 25.07 Is Inapplicable**

Although Plaintiff seeks an interpretation of ACAL § 25.07 that would extend to StubHub, there is no dispute that the statute does not apply, on its face, because StubHub is not an "operator of a place of entertainment."

ACAL § 25.07(1) requires "[e]very operator of a place of entertainment" to print the established price (*i.e.*, the amount charged by the operator) on the face of the ticket, or the final auction price if the ticket was sold or resold by auction through the operator or its agent. StubHub clearly is not an operator of a place of entertainment, nor is there any allegation in the Amended Complaint that Plaintiff purchased her resold Yankees tickets through an auction.[2] Thus, this section of the statute undisputedly does not apply to StubHub at all.[3]

Plaintiff offers three arguments to try and get around the clear limited scope of ACAL § 25.07, none of which has any merit. First, without any citation whatsoever, Plaintiff contends that ACAL § 25.07(1) applies to StubHub because "ACAL Article 25 was enacted to regulate the secondary ticket market." (Opp'n. at 11). Plaintiff's view is mistaken – ACAL § 25 clearly

---

[2] Plaintiff in fact did not purchase these tickets via an auction. In addition, for all purchasers who use the StubHub platform, StubHub provides an order confirmation form and requests that the buyer take it with them to the Yankees game. (*See* Hochstadt Reply Decl., Ex. 1). The form sets forth various information, including the final resale price per ticket that the buyer agreed to pay.

[3] As for the Yankees, although it is an "operator of a place of entertainment," there is no dispute that it complied with ACAL § 25.07 when it originally sold the tickets at issue through its exclusive primary ticket agent, Ticketmaster, to John Doe. That primary transaction is not at issue in this case.

2

regulates *both* the primary and secondary ticket market.[4]  Unlike ACAL § 25.07(1), which applies only to operators of a place of entertainment, ACAL § 25.07(2), which is not at issue in this case, actually applies to the secondary ticket market.  That provision states that "any person, firm or corporation, regardless of whether or not licensed under this article, *that resells tickets or facilitates the resale or resale auction of tickets between independent parties by any means*," must provide certain guarantees to the buyer.  (Emphasis added).  Plaintiff does not dispute that StubHub complies with this provision with its Fan*Protect*™ Guarantee.  The distinction in the language used in these two provisions demonstrates that if the Legislature intended ACAL § 25.07(1) also to apply to Internet websites that merely "facilitate[] the resale…of tickets," they knew how to do so and would have done so.

Second, Plaintiff offers a hypothetical policy argument that is inapplicable to the issues presented here.  Plaintiff argues that if ACAL § 25.07(1) only applies to operators of a place of entertainment, as it actually states in the statute, then operators like the Yankees could "issue all of their tickets on the primary market to an agent," who could then sell them without disclosing the face amount.  (Opp'n. at 11).  This fanciful example ignores the statute and the facts as pled.  Here, Plaintiff alleges that the Yankees do use an agent, Ticketmaster, to sell their tickets.  (*Id*. at 4; Am. Compl. ¶ 10).  And there is no dispute that Ticketmaster complies with the statute.

Third, Plaintiff questions StubHub's motives, surmising that Defendants "do not want consumers to know the Established Price as it would have a negative effect upon ticket sales." (*Id*. at 11).  Although Plaintiff's disagreement with StubHub's business practice is irrelevant to this motion, it is noteworthy that her position ignores the many disclosures that appear

---

[4] For example, the Legislative findings make clear that the law was intended to apply to the primary market as well.  *See* ACAL § 25.01 ("transactions involving tickets for admission to places of entertainment are a matter of public interest").  *See also* NY TICKET SELLING REPORT at 12 ("Article 25 of the Arts & Cultural Affairs Law places two primary prohibitions on the primary market.") (Hochstadt Reply Decl., Ex. 2).

throughout the website. StubHub expressly tells buyers that prices are likely different from, and *can be higher than*, the face value of the ticket, and that, "If you are concerned about paying more than face value for tickets, StubHub recommends *checking an event's ticket prices with the venue before placing an order*." (Mem. at 17) (emphasis added). StubHub is not hiding anything.

### B. The ACAL Does Not Require Disclosure Of Resellers' Identities

Plaintiff's second claim is that StubHub aids resellers to violate ACAL § 25.13 "by providing them with a platform to anonymously sell tickets." (Opp'n. at 12).[5] Plaintiff boldly claims that StubHub "violate[s] the law" and engages in "criminal activity" by not disclosing the identities of resellers who use StubHub. (*Id.* at 13-14). Noticeably absent from Plaintiff's brief (and Amended Complaint) is the identification of any ACAL provision that actually imposes such an obligation. That is because no such provision exists in ACAL § 25.13 or in any other section of the ACAL. Rather, ACAL § 25.13 provides for conditions under which a reseller must be licensed and specifically exempts businesses like StubHub from those requirements.

In Defendants' opening brief, Defendants explained why allowing a claim for derivative liability would circumvent the statutory exemption. Plaintiff ignores Defendants' argument that imposing derivative liability here would render meaningless the statutory exemption for websites that serve "as a platform to *facilitate resale*" or, as recognized by the New York Department of State, as "*a virtual marketplace*." (Mem. at 9) (emphasis added).

Instead, Plaintiff relies on N.Y. Penal Law § 20 and an eBay Form 10-K, but neither of these sources helps Plaintiff's cause. N.Y. Penal Law § 20 could only apply, if at all, if resellers were "engag[ing] in conduct which constitutes an offense." Tellingly, Plaintiff has not cited a single instance where the Department of State or any court has ever attempted to apply N.Y.

---

[5] Plaintiff also claims this conduct violates ACAL § 25.09. But this section is expressly tied to ACAL § 25.13, and simply states that any person who violates ACAL § 25.13 is guilty of ticket speculation.

4

Penal Law § 20 to the secondary ticket resale context. Further, Plaintiff's argument that eBay admitted to "illegal conduct" in its Form 10-K mischaracterizes that filing. eBay made no such admission. Rather, eBay merely disclosed that changes in ticketing laws are a potential risk factor for investors because "courts *may* claim or hold that we are responsible for ensuring that our users comply with [ticketing] laws…." (Opp'n. at 13-14) (emphasis added).

In sum, the ACAL does not require resellers to identify themselves and StubHub cannot be held liable on a derivative basis for not doing more than New York law requires.

### C.    The ACAL Does Not Require StubHub To Disclose The Face Amount

Plaintiff admits that ACAL § 25.23 only requires "a licensee who conducts business through the use of the internet to disclose the Established Price of tickets…." and that StubHub is exempt from these licensing requirements. (*Id*. at 3). Since Plaintiff admits that ACAL § 25.23 does not apply to StubHub, Plaintiff again frames this claim as one for aiding alleged violations by resellers. For all the reasons discussed above, including that allowing such an unprecedented claim would constitute an end-run around the statutory exemption in ACAL § 25.13, this aiding claim also should be dismissed.

At bottom, Plaintiff's argument centers on her disagreement with StubHub's business decision not to require resellers to disclose the face value of resold tickets. StubHub has decided that it is better to inform buyers where to get this information – from the venues of the events – rather than requiring resellers to provide this information, which risks misinformation and/or mistakes. Given its statutory exemption under the ACAL, StubHub is permitted to make this decision. Indeed, the Department of State undisputedly confirmed that StubHub is exempt from the ACAL, and that such exemption is consistent with CDA immunity. (Mem. at 10).[6]

---

[6] Defendants do not agree with Plaintiff's characterization of their position on the CDA. (Opp'n. at 7). Plaintiff's claims are barred by the CDA, and Defendants reserve their right to assert this defense.

Notably here, Plaintiff alleges that she was redirected to the StubHub website from the URL www.yankees.com. The Yankees' website clearly sets forth the established price (*i.e.*, face value) for all tickets sold by the Yankees and/or Ticketmaster. Thus, the face value was available to Plaintiff prior to her purchase of any tickets on the secondary market.

## II. COUNT II FAILS TO STATE A CLAIM UNDER GBL § 349

### A. Without An ACAL Violation, The GBL § 349 Claim Fails

Plaintiff concedes that her GBL § 349 claim is premised entirely on her ACAL § 25 claim. (*See* Mem. at 14). Furthermore, since Plaintiff does not dispute Defendants' position that if the ACAL § 25 claim fails so does the GBL § 349 claim, the argument is unopposed and the GBL § 349 claim should be dismissed on this basis alone. (*See id.*)

### B. Plaintiff Failed To Allege Deception

Plaintiff does not dispute that she knew: 1) the price she agreed to pay to purchase Yankees tickets through StubHub's website; 2) she purchased Yankees tickets from a third-party reseller and that the face value and identity of the reseller were not disclosed at the time of the sale; and 3) StubHub's website contains numerous disclosures that ticket prices may be higher than the face amount and that concerned buyers should check with the venue of the event before placing an order. (Mem. at 1-2, 15-18, 20). Thus, it is undisputed that Plaintiff knew everything she complains about in this case *before* she purchased her tickets through StubHub, and decided to proceed with the purchase. As shown by the cases cited in Defendants' opening brief – none of which Plaintiff disputes – under these circumstances there cannot be deception as a matter of law (*id*. at 15), a necessary element for asserting a cognizable GBL § 349 claim. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25-26 (N.Y. 1995).

---

However, for purposes of the motion to dismiss only, Defendants did not rely on federal immunity because of the clear inapplicability of the ACAL.

Rather than respond to the lack of deception here, Plaintiff now claims that the deceptive conduct is the "Yankees' practice of redirecting consumers to StubHub." (Opp'n. at 21). According to Plaintiff, "the *least sophisticated consumer* does not understand the difference between the primary ticket market and the secondary ticket market and would likely assume that they are purchasing tickets directly from the Yankees…." (*Id.*) (emphasis added). This argument is meritless.

First, in *Oswego Laborers,* the Court of Appeals made clear that the test under GBL § 349 is not whether the least sophisticated consumer is deceived. Rather, the test is whether the allegedly deceptive act or practice could "mislead a *reasonable* consumer acting *reasonably* under the circumstances." 85 N.Y.2d at 26 (emphasis added). Indeed, the Court of Appeals adopted this *objective* test precisely to avoid cases just like this one: "[W]e are mindful of the potential for a tidal wave of litigation against businesses that was not intended …. That possibility is avoided … by … an objective definition of deceptive acts and practices…." *Id.*

The "reasonable consumer" clearly would have known that they were no longer on the Yankees.com website purchasing tickets from the Yankees. The Yankees and StubHub websites disclose that StubHub is a Fan to Fan marketplace. (*See* Hochstadt Reply Decl., Exs. 3, 5-6).[7] The StubHub logo also appears on *every* page of the StubHub website and Plaintiff agreed to the StubHub User Agreement *before* purchasing the Yankees tickets. (Mem. at 16-17; Hochstadt Reply Decl., Ex. 6). StubHub's website also (1) contains a "Buyer Q and A" that tells buyers that "Sellers may be individuals, businesses, ticket brokers … or just about anyone….;" and (2) sets forth on every page before the transaction is made that buyers are purchasing tickets from

---

[7] Although Plaintiff claims she was "redirected" automatically from the Yankees' website to StubHub's website, the cited pages from the Yankees' website clearly show that she had to affirmatively choose one of the hyperlinks to go to StubHub, presumably after she determined that tickets in her price range were no longer available for primary sale through the Yankees' website. (Hochstadt Reply Decl., Exs. 3-6).

7

third parties and that those resale ticket prices may vary from face value. (*Id.*) Any reasonable consumer acting reasonably would know she was not buying tickets from the Yankees.

Plaintiff's other claims of "deception" likewise fail as these claims merely are a conclusory recitation of Plaintiff's causes of action. (*See, e.g.*, Opp'n. at 21 ("Other misleading practices … are the … allegations that StubHub does not disclose the [face value] of the tickets at the time of sale.…"). Conclusory allegations unsupported by facts do not defeat a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Since Plaintiff has not alleged any deception, her GBL § 349 claim fails as a matter of law.

### C. Plaintiff Failed To Allege Injury

Plaintiff admits that she also must plead injury in order to pursue a GBL § 349 claim (and ACAL § 25 claim). (Opp'n. at 17, 21). Yet, Plaintiff ignores the case law showing that GBL § 349 claims are dismissed where, as here, there is no causal connection between the alleged injury and the deception, as well as where adequate disclosures were provided. (Mem. at 19-20).

Plaintiff claims that her injury is "lack of information." (Opp'n. at 17). This, however, is not an injury; it is just a recitation of the alleged deception. Lack of information cannot be both the alleged deception and the injury. Plaintiff does not cite any case law to the contrary.[8]

Plaintiff's reliance on the $50 minimum statutory damages provision also is misplaced. (*Id*. at 18). If Plaintiff was correct that the existence of statutory damages alone was sufficient to meet the injury requirement of the statutes, then the injury element would be read out entirely because any violation in and of itself would be sufficient to entitle a person to a recovery. That there is a damages provision in the statute does not negate the need to adequately plead an injury. Rather, damages are what is awarded if one properly pleads an injury.

---

[8] Plaintiff cites only *Brady v. Posse*, No. SCR 1550/06, 14 Misc.2d 1232(A), 2007 WL 519273 (N.Y. City Civ. Ct., Richmond Cty. Feb. 16, 2007), a small claims court decision that did not involve any of the statutes at issue here. (Opp'n. at 18).

8

Finally, Plaintiff's other claimed injury is that higher resale ticket prices resulted from the allegedly omitted information. (Opp'n. at 17). However, this argument fails for lack of causation because Plaintiff fails to tie any alleged deception to her claimed injury here. As noted above, Plaintiff herself alleges that she was redirected from the Yankees website, which contained the face values for all tickets, and StubHub provided disclosures throughout its website so buyers would know they are purchasing resold tickets at market, not face, value from third party sellers.[9]

In addition, Plaintiff's injury argument is pure speculation unsupported by the alleged facts. For example, Plaintiff does not allege that the reseller, who sought $33 per ticket, would have sold them to her for less had all the information she complains about been disclosed, as opposed to another purchaser at the exact same price. Nor does Plaintiff allege that these were the lowest priced tickets available to her. Further, Plaintiff does not dispute that she was willing to pay $33 for each Yankee ticket and does not explain *how* or *why* knowing the $20 established price or John Doe's identity would have led to a lower price. (Mem. at 19).

Accordingly, Plaintiff's assertions of injury fall far short of "rais[ing] [Plaintiff's] right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 555 (2007).[10]

## III.  EBAY IS NOT LIABLE FOR THE CHALLENGED CONDUCT

There is no dispute that the conduct at issue does not arise out of a sale on eBay's website and there are no substantive allegations directed against eBay. (Mem. at 7-8). Plaintiff also concedes that "the mere fact that there exists a parent-subsidiary relationship between two

---

[9] Adopting Plaintiff's view would mean that New York retailers would always be required to disclose their costs and how much they are marking-up clothing for sale because that could, at least theoretically, lead to lower clothing prices. New York law does not require such an absurd result. (*See* Mem. at 16 (citing *Chiste v. Hotels.com LP*, No. 08 Civ. 10676 (CM), 2010 WL 4630317, at *12 (S.D.N.Y. Nov. 15, 2010) ("[a]ny reasonable consumer would understand that businesses are in business to make a profit") (Hochstadt Decl., Ex. 18)).

[10] Plaintiff's speculative injury contentions even fall far short under the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 46 (1957), which the Supreme Court "retired" in *Twombly*, 550 U.S. at 563, and which Plaintiff mistakenly cites for the standard on this motion to dismiss (*see* Opp'n. at 6-7).

9

corporations" does not "make the one liable for the torts of another." (*Id*. at 8) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Yet Plaintiff has set forth no allegations other than the mere existence of a parent-subsidiary relationship between eBay and StubHub.[11] Indeed, Plaintiff fails to point to *any* factual allegations to substantiate her serious accusation that "eBay operates StubHub in an illegal manner…." (Opp'n. at 20). There is a total absence of allegations demonstrating that: 1) eBay "exercise[s] control over the daily operations" of StubHub; 2) eBay "act[s] as the true prime mover[]" behind StubHub's actions; or 3) StubHub "exists solely to serve" eBay. (*Id*. at 19). Thus, eBay should be dismissed on this basis alone.

## IV.     THE YANKEES ARE NOT LIABLE FOR THE CHALLENGED CONDUCT

The Yankees are barely mentioned in Plaintiff's opposition brief. This is not surprising since Plaintiff does not allege to have purchased tickets from the Yankees, but instead concedes that she purchased them from a reseller. The only challenged act aimed at the Yankees is the redirecting of customers to StubHub. Such allegations do not give rise to a *prima facie* claim against the Yankees. Since Plaintiff has not set forth the elements of any cause of action against the Yankees, the Amended Complaint should be dismissed against the Yankees.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their opening brief, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety.

---

[11] Neither Plaintiff's reliance on *Townley v. Emerson Electric Co*., 178 Misc.2d 740 (N.Y. Sup. Ct. Monroe Cty. 1998), nor N.Y. Penal Law § 20.25 alters that conclusion. As *Townley* stated, "the essence of the test is the parent's 'complete' domination" of its subsidiary. 178 Misc.2d at 745. Plaintiff does not allege any facts that would satisfy this test. Further, Plaintiff's suggestion that eBay is somehow criminally liable for StubHub's alleged conduct under N.Y. Penal Law § 20.25 is simply irrelevant. (Opp'n. at 19). That provision relates to criminal liability of an *individual* for corporate misconduct.

Dated: March 17, 2011                WEIL, GOTSHAL & MANGES LLP

/s/ David J. Lender
David J. Lender
Mark Fiore
Eric S. Hochstadt
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile:   (212) 310-8007
david.lender@weil.com
mark.fiore@weil.com
eric.hochstadt@weil.com

*Attorneys for Defendants*
*eBay Inc., StubHub, Inc., and*
*the New York Yankees Partnership*