# EXHIBIT 7

**C**(The decision of the Court is referenced in a table in the New York Supplement.)

Civil Court, City of New York,
Richmond County.
Lori BRADY, Claimant,
v.
Lourdes POSSE, Defendant.

No. SCR 1550/06.
Feb. 16, 2007.

Claimant appeared pro se.

Robert Rampulla, Esq., Sak & Rampulla LLP, Staten Island, Counsel for Defendant.

PHILIP S. STRANIERE, J.

*1 Claimant, Lori Brady, commenced this small claims action against the defendant, Lourdes Posse, alleging that the defendant concealed a water condition in the basement of the premises 265 Elverton Avenue, Staten Island, New York when defendant sold the premises to claimant in October 2006. A trial was held on November 30, 2006. Claimant represented herself. Defendant was represented by counsel.

Claimant testified that after moving into the above premises in October 2006, she removed wallpaper in the basement and found a serious mold condition in an area behind a basement refrigerator that existed because of a crack in the foundation. Claimant had a structural inspection done prior to purchase of the premises but neither the foundation crack nor the mold condition was revealed. The inspector testified that the mold was behind a refrigerator that he had not moved as part of the inspection process. The defendant denied having any knowledge of the mold condition, the crack in the foundation, or any water problems. In addition, the defendant asserts that the contract provided that the premises was sold "as is" and that the claimant hired her own inspector to do a structural inspection who did not discover the problem. Claimant paid to have the mold condition corrected and the leak sealed and is seeking to be reim-

bursed for those expenses by the defendant.

LEGAL ISSUES PRESENTED:

A. Is Real Property Law Article 12-B Applicable?

1. Can an unlicensed home inspector testify?

Effective December 31, 2005, all individuals or other business entities conducting residential home inspections on buildings containing one to four dwelling units must be licensed pursuant Article 12-B of the Real Property Law, the Home Inspection Professional Licensing Act. In enacting the statute in 2004 the New York State Legislature acknowledged at that time there were no laws to protect home buyers and sellers from unscrupulous persons acting as home inspectors. The bill, designed as consumer protection legislation was to ensure that the public, specifically, home buyers who pay a third party to inspect a home, will receive competent, professional and accountable services. The sponsors of the law noted that in New York no training, experience or credentials were required in order to conduct home inspections so, as a result, persons without qualifications were presenting themselves as professional home inspectors. These untrained inspectors then prepared either written or oral reports that were inaccurate or incompetent but were relied upon by the unsuspecting purchaser. These purchasers would enter into contracts using the unprofessionally prepared report and later, after title closing, would find themselves making repairs at great expense.

Claimant testified she had a structural inspection of the premises performed prior to signing the contract of sale in August 2006. Paragraph 3 of the Rider to Contract signed by the parties contained the following language: "The PURCHASER agrees, warrants and represents that the PURCHASER has examined the PREMISES agreed to be sold herein and has been given ample opportunity to perform tests and/or to consult independent professionals concerning same, and therefore is fully and completely familiar with the condition thereof." A copy of that inspection report was not made part of the record, but the inspector who conducted the survey testified at the

14 Misc.3d 1232(A), 836 N.Y.S.2d 492, 2007 WL 519273 (N.Y.City Civ.Ct.), 2007 N.Y. Slip Op. 50276(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 14 Misc.3d 1232(A), 2007 WL 519273 (N.Y.City Civ.Ct.))**

trial.

**\*2** Claimant had testify, as its "expert" witness, the principal of AAA Home Services, Inc. The witness testified that when he reinspected the premises on October 12, 2006, he discovered the mold and water problem. The witness stated that he was aware of the new licensing statute but had not as yet been licensed pursuant to its terms. The Court is faced with the question as to what is the legal effect of the inspector not being in compliance with RPL Article 12-B when he performed the inspection and when he appeared to testify as an expert.

RPL 444-d provides: "No person shall conduct or represent that he or she has the ability to conduct a home inspection for compensation unless such person is: 1. licensed as home inspector pursuant to this article; ..." The section also sets forth other categories of individuals who because of their training and licensing by the state of New York can perform home inspection services. This includes architects, engineers, code enforcement officials or a person conducting an inspection in order to obtain licensure under RPL 444-e. It was conceded that the witness in this case had not met this requirement when he conducted his two inspections of the premises and testified in this matter. Although this section does permit experienced persons to be "grandfathered" in if they have a certain amount of experience and training, it does not appear that the witness had met that criteria so as to permit him to have been licensed at the time he conducted his inspections. Nor did the witness testify as to his expertise so as to enable the Court to determine that, had he presented his credentials to the Secretary of the New York Department of State, he would at least facially have met the statutory qualifications for licensing so that the issuance of his license would have required only the ministerial act of the Secretary. The statute provides no guidance as to what is the legal effect of a purchaser relying on the home inspection report of an unlicensed individual.

The above being the case, and the legislative intent clear that the purpose of the licensing statute is to protect the public, the Court cannot entertain the witness' testimony no matter how sincere and accurate it may have been. To do so would negate the intent of RPL Article 12-B and would permit a continuous stream of unlicensed "home inspectors" to render opinions, a practice which the legislature has sought to eliminate.

2. Does the statute create a cause of action against an unlicensed home inspector?

It should be noted that RPL Article 12-B does not create a private right of action in favor of a consumer who relies on the inspection report of an unlicensed home inspector. A comparison of RPL Article 12-B with General Business Law Article 36-A, another consumer protection law, which by its terms regulates the contracts of Home Improvement Contractors and provides for their licensing by local authorities (See 6 Rules of the City of New York 2-21 et seq.), leads to the conclusion that there may be a significant legal effect of this legislative silence. GBL Article 36-A specifies what clauses must be included in a home improvement contract (GBL 771); the penalty for fraud in addition to any damages actually incurred (GBL 772(1)); the continuation of any common law duties and liabilities (GBL 772(2)); and the authority of the New York State Attorney General to seek injunctive relief against violators.

**\*3** The Secretary of State is authorized to impose a civil penalty on a license holder of one thousand dollars per violation (RPL 444-h). The penalty does not apply to unlicensed inspectors. RPL Article 12-B gives no means of redress to a consumer who is harmed by the activities of the unlicensed home inspector, nor does it specify what items must be included in an inspection report or if there should be a written agreement between the inspector and client. It only requires the licensed inspector to deliver a written report within five days of the date of the actual inspection. In addition to criminal penalties (RPL 444-o), it only permits the Secretary to:

> issue an order requiring restitution and/or directing the cessation of any activity for which a license is required by this article upon a determination that a person has engaged in or followed the business or occupation of, or held himself, herself out as or acted as, temporarily or otherwise, a home inspector within this state without a valid license (RPL 444-n).

Presumably "an order requiring restitution" would mean that the Secretary could direct the unlicensed home inspector to refund the fee charged. Does the failure to create a right of action against the unlicensed home inspector for damages suffered pre-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

14 Misc.3d 1232(A), 836 N.Y.S.2d 492, 2007 WL 519273 (N.Y.City Civ.Ct.), 2007 N.Y. Slip Op. 50276(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 14 Misc.3d 1232(A), 2007 WL 519273 (N.Y.City Civ.Ct.))**

empt any common law remedies available to the purchaser of the home who is now faced with correcting a condition which the unlicensed inspector failed to disclose? Further, since there is no mention of the continuance of a common law action against licensed home inspectors, is an injured consumer precluded from suing a licensee who is negligent in conducting the inspection?

What the legislative intent is in regard to a consumer's right of action must further be questioned because RPL Article 12-C which licensed Apartment Information Vendors in the section establishing the Secretary's authority in regards to violations of the statute, contemplates that an injured consumer may bring an action to recover monies paid and, in addition, can collect quadruple damages (RPL 446-h(3)). No similar language is set forth in RPL 444-o, the section that defines what remedies are available against unlicensed home inspectors for "violations and penalties for unlicensed activities." Even the questionable Property Condition Disclosure in the Sale of Residential Real Property Act (RPL Article 14) specifically recognizes and preserves existing common law rights and remedies of the parties (RPL 465 & 467). What is to be concluded by the legislature's failure to clarify this issue when it enacted RPL Article 12-B legislation? Has the legislature in its zeal to protect the public actually limited what avenues of redress are available to an injured consumer?

Since this is not a suit by the purchaser against the unlicensed home inspector, the Court will not reach a conclusion as to this issue in this litigation.

B. Is the PCDA Applicable to this transaction?
Real Property Law 14 which was effective March 1, 2002 was designed to protect the purchasers of residential real property from, subsequent to closing learning of problem areas not readily observable by a visual inspection of the property and presumably known to the sellers by having sellers complete a forty-eight question form in which the seller would disclose information about the condition of the real property being sold. For some reason the purchasers of condominiums and cooperatives were not included in this protective legislation, something this Court has previously questioned ( Goldman v. Fay, 8 Misc.3d 959 (2005)). Similarly, such home owners are not covered by the new Home Inspection Licensing Law since it only applies to residential buildings of less than one to four dwelling units (RPL 444-b(7)). Presumably, purchasers in condominiums and cooperatives do not need this protection and can hire Wylie Coyote from the "Acme Home Inspectors" located in the Warner Brothers' cartoon department.

*4 This Court was the first to opine that this legislation establishing the PCDA, although academically well intentioned, was not drafted to achieve the practical purpose of protecting home buyers ( Malach v. Chuang, 194 Misc.2d 651 (2002)). One of the reasons for this was the fact that the RPL 465 permits a seller to opt out of completing the form and in exchange give the purchaser a $500.00 credit at the closing of title.

In the case at bar, the seller specifically included language in the contract of sale that the seller would not be completing the "Property Condition Disclosure Statement in accordance with RPL Article 14," but would give the purchaser a $500.00 credit at closing (Rider to Contract paragraph 21). This credit is reflected on the HUD-1 delivered to the parties by the settlement agent at the closing of title on October 10, 2006. By the seller exercising her rights in this regard, the purchaser is left to seek relief by invoking the common law rights the legislation permitted her to retain (RPL 467). It should be pointed out that the seller's action in this regard of not completing the disclosure statement is by far the common practice in downstate New York. Most attorneys in the New York City metropolitan areas advise their clients not to complete the disclosure statement. The practice in upstate New York apparently is the opposite.

Had the PCDA been mandatory, then the defendant herein would have had to have completed the disclosure form, thereby potentially establishing a basis for an action in common law fraud. This Court has pointed out that the PCDA does not create its own statutory cause of action. Claimant is now required to prove the more difficult cause of action of common law fraud by trying to establish what knowledge of the condition the defendant actually had at the time of contract.

Taking the intent of the PCDA, together with the intent of RPL Article 12-B to protect consumers by having them receive accurate descriptions of residential real property being purchased, would it not make more sense to abolish the PCDA and add to the duties

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

14 Misc.3d 1232(A), 836 N.Y.S.2d 492, 2007 WL 519273 (N.Y.City Civ.Ct.), 2007 N.Y. Slip Op. 50276(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 14 Misc.3d 1232(A), 2007 WL 519273 (N.Y.City Civ.Ct.))**

of the licensed home inspector the requirement to complete the disclosure form set forth in RPL 462? This would eliminate the seller answering "unknown" to all of the questions and would have the licensed inspector checking each item on the form. The purchaser would be getting a report of the structural condition of the premises from a licensed inspector.

The PCDA is not applicable to this transaction and once again provides no protection to the consumer.

D. Did the Claimant Establish Common Law Fraud?
In order to prevail on a claim for fraud or deceit, the claimant must establish by clear and convincing evidence that (1) the defendant made a representation of a fact; (2) the representation was false; (3) the defendant knew the representation was false or made the representation recklessly without regard to whether the representation was true or false; (4) the defendant made the representation to induce the claimant to purchase the premises; and (5) the claimant justifiably relied upon the defendant's representation in deciding to purchase the premises.

*5 A review of the contract discloses that the seller made no representations as to the condition of the basement, that is, whether there were any cracks in the foundation, resulting leaks or mold problems. The contract at paragraph 3 of the Rider represents only that the roof is free of leaks. There is no mention of the basement. In fact, it cannot even be concluded that freedom from these conditions was somehow implied. Paragraph 12 of the contract and paragraph 3 of the Rider contain a standard "as is" clause. Paragraph 3 of the Rider also specifically provides that the seller made no representation as to the condition of the premises, including the roof or basement. Paragraph 28 of the contract contains a standard merger clause in regard to any representations between the parties as well.

The contract resulted from an arm's length transaction negotiated between the parties. Both parties were represented by counsel for the negotiation of the contract and the closing of title.

As set forth above, the claimant had a structural inspection conducted by an unlicensed home inspector, who testified credibly and admitted that the leak-

ing and mold condition was not readily discoverable upon reasonable inspection by him. He only was able to find the source of the leak after the claimant went into possession and began to renovate the basement. The Court has previously determined that inspector's testimony cannot be accepted as that of an expert because he was not licensed at the time. It is being used only to establish that the condition was not subject to discovery upon reasonable inspection by someone who is purportedly trained to locate such problems, let alone by a lay person.

In order to prevail the claimant had to establish that the defendant had actual knowledge of the condition and deliberately withheld that information so as to induce the claimant to purchase the house, or at a minimum, had the claimant known of the condition she would have negotiated a reduction of the purchase price to reflect the fact that the claimant would have to remediate those problems. The claimant has not established that the defendant had such knowledge of the condition or deliberately withheld that information. The claimant is unable to establish fraud in the inducement. Case law has held that there can be no common law fraud cause of action under a statutory scheme where the seller elects not to make any representations ( *Bishop v. Graziano,* 10 Misc.3d 342 (2005)).

This case exemplifies the difficulties a claimant has in proving a fraud case. If the leak was a latent defect then the claimant has to prove the defendant knew of the condition and deliberately failed to reveal it. The claimant did not establish this. If the leak was a patent defect then it was open, obvious and readily able to be discovered upon reasonable observation. In such a situation, the defendant would not have to say anything because the claimant should have discovered the condition.

CONCLUSION:
*6 Judgment for defendant. Claimant has failed to prove her prima facie case. Claimant's cause of action is dismissed on the merits.

The foregoing constitutes the decision and order of the Court.

N.Y.City Civ.Ct.,2007.
Brady v. Posse
14 Misc.3d 1232(A), 836 N.Y.S.2d 492, 2007 WL

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

14 Misc.3d 1232(A), 836 N.Y.S.2d 492, 2007 WL 519273 (N.Y.City Civ.Ct.), 2007 N.Y. Slip Op. 50276(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 14 Misc.3d 1232(A), 2007 WL 519273 (N.Y.City Civ.Ct.))**

519273 (N.Y.City Civ.Ct.), 2007 N.Y. Slip Op. 50276(U)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.