UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------X
ANDREA WEINSTEIN,                   :
                                    :
              Plaintiff,            :
                                    :
     -against-                      :
                                    :        No. 10 Civ. 8310 (JFK)
EBAY, INC., STUBHUB, INC., NEW      :        Opinion and Order
YORK YANKEES PARTNERSHIP, and       :
JOHN DOE,                           :
                                    :
              Defendants.           :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-27-11

APPEARANCES

> For Plaintiff:
> Randall Newman, Esq.
> NEWMAN & ASSOCIATES, P.C.
>
> Mark Rifkin, Esq.
> WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
>
> For Defendants:
> David Lender, Esq.
> Eric Hochstadt, Esq.
> Mark Fiore, Esq.
> WEIL, GOTSHAL & MANGES LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendants eBay, Inc., StubHub, Inc., and the New York Yankees Partnership's motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, the motion is granted.

## I.    Background

Defendant eBay operates an internet auction website.  On January 10, 2007, eBay announced in a press release that it

planned to acquire Defendant StubHub.  (Am. Compl. ¶ 25).
StubHub is an online marketplace for the resale of sporting
event, concert, and theater tickets.  StubHub itself does not
own the tickets that are resold on its website.  Instead,
StubHub operates in what is known as the secondary ticket
market, a market for third parties - ranging from ticket brokers
to casual sellers who have extra tickets - to resell tickets
they have purchased directly from a vendor.  (Id. ¶¶ 20, 24).
Unlike eBay, sellers on StubHub are anonymous.  (Id.).  StubHub
does not function as an auction; instead, ticket sellers set
their own prices for prospective buyers to accept or reject.
The Amended Complaint alleges on information and belief that in
2007, StubHub, the Yankees, and Major League Baseball entered
into an agreement making StubHub the exclusive resale
marketplace for tickets to many Major League Baseball games,
including Yankees games.  (Id. ¶ 11).

     The Yankees offer customers two options for purchasing
baseball tickets on the internet.  Customers can buy tickets
directly from the Yankees online box office; with direct sales,
customers can forego paper tickets in favor of electronic
tickets issued by Ticketmaster Entertainment, the Yankees'
exclusive primary ticket agent.  (Id. ¶¶ 10, 12).  The Yankees
website also has a link to StubHub.  (Id. ¶ 29).  If, for
example, a customer could not find the seats she wanted for sale

directly from the Yankees online box office, she could go to StubHub and try to purchase them from another fan.  Like Ticketmaster, StubHub can issue electronic tickets that the customer prints out and brings to the event venue.  (Id. ¶ 12). Electronic tickets issued through StubHub do not reflect the face value (also known as the "established price") of the ticket.  (Id. ¶ 38).

Plaintiff Andrea Weinstein alleges that on June 14, 2010, she went to the Yankees website looking for tickets to the July 25, 2010 Royals/Yankees game at Yankee Stadium.  (Id. ¶ 28). Plaintiff attempted to purchase tickets directly from the Yankees, but was unsuccessful; she claims that the Yankees website redirected her to StubHub.  (Id. ¶ 29).  Plaintiff ultimately purchased six tickets in the Grandstand Outfield, Section 426, Row 5 from a seller (the John Doe Defendant) on StubHub.  (Id. ¶ 30).  She paid $33 per ticket, plus a $19.80 service fee and a $4.95 fee to receive the tickets electronically.  (Id.).  The electronic tickets did not reflect their face value, which Plaintiff alleges to be $20.  (Id. ¶¶ 32-33, 60; Ex. A).

Plaintiff has amended her complaint once as of right.  The gravamen of the Amended Complaint is that: (1) StubHub's online marketplace evades certain New York state licensing requirements governing ticket resellers; and (2) StubHub's failure to

disclose a seller's identity and the face value of resold tickets is a deceptive practice in violation of New York law. Plaintiff proposes to represent a class composed of "[a]ll persons, exclusive of the Defendants and their employees, who purchased tickets to a New York Yankees game on StubHub.com from November 3, 2007 through such time in the future when the effects of Defendants' [alleged licensing violation] have ceased," (Id. ¶ 39), as well as a subclass of those purchasers who received their Yankees tickets electronically through StubHub.  (Id. ¶ 40).

## II.    Discussion

On a Rule 12(b)(6) motion to dismiss, the court must test the "legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  Plaintiff mistakenly cites the Conley v. Gibson "no set of facts" standard in opposition to Defendants' motion to dismiss.  However, the Supreme Court has made clear that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

4

### A.   Standing to Sue Defendant eBay

Article III standing requires that a plaintiff:  (1) suffer an injury-in-fact; (2) establish a causal connection between the injury and the conduct of the defendant; and (3) demonstrate the likelihood that the injury will be redressed by the requested relief.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Neither Plaintiff nor any member of the proposed class purchased tickets through an eBay auction.  The only factual allegation in the Amended Complaint involving eBay is that it acquired StubHub in 2007 in order to compete in the secondary ticket market.  Thus, the sole basis for Plaintiff's standing to sue eBay is its parent/subsidiary relationship with StubHub.

It is well accepted that a parent corporation is not liable for the actions of its subsidiary absent facts sufficient to pierce the corporate veil.  See, e.g., Billy v. Consol. Mach. Tool Corp., 412 N.E.2d 934, 941 (N.Y. 1980) ("It is true that, on occasion, the courts will disregard the separate legal personality of the corporation and assign liability to its owners . . . .  But, such liability can never be predicated solely upon the fact of a parent corporation's ownership of a controlling interest in the shares of its subsidiary.").  Under New York law, piercing the corporate veil requires a showing that:  "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that

5

such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Morris v. N.Y. State Dep't of Taxation & Fin., 623 N.E.2d 1157, 1160-61 (N.Y. 1993). As conceded at oral argument on this motion, Plaintiff has not pleaded facts to establish either of Morris's requirements. Factors tending to show domination, such as overlapping management, comingled assets, inadequate capitalization, and failure to conduct arms length transactions, are entirely absent from the Amended Complaint. See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991). Nor is there any allegation that eBay acquired or otherwise used StubHub to injure Plaintiff. Plaintiff has not stated a claim for piercing the corporate veil and thus has not established standing to sue StubHub's parent company. Nevertheless, the court will consider the viability of Plaintiff's claims against Defendant eBay in an abundance of caution.

### B.   New York Arts and Cultural Affairs Law Claim

Three sections of New York's Arts and Cultural Affairs Law ("ACAL") form the basis of Plaintiff's first claim. The ACAL grants a private right of action to any person injured by a violation of any of the three sections discussed below. See N.Y. Arts & Cult. Aff. Law § 25.33.

### 1.   ACAL § 25.07

ACAL § 25.07 regulates the provision of face value ticket

price information:

> Every operator of a place of entertainment shall, if a
> price be charged for admission thereto, print or
> endorse on the face of each such ticket the
> established price,[1] or the final auction price if such
> ticket was sold or resold by auction through the
> operator or its agent.

N.Y. Arts & Cult. Aff. Law § 25.07(1).  Plaintiff alleges that

eBay, StubHub and the Yankees are each directly liable under §

25.07 for omitting the $20 face value from her electronic

Yankees tickets.  By its own terms, § 25.07 only applies to

"operators."  An operator is "any person who owns, operates, or

controls a place of entertainment or who promotes or produces an

entertainment."  N.Y. Arts & Cult. Aff. Law § 25.03(5).  There

is no allegation, nor could there be, that Defendants eBay or

StubHub own, operate, or control Yankee Stadium or promote or

produce Major League Baseball games.  Furthermore, ACAL §

25.07(2), which immediately follows the "operator" ticket

pricing regulation at issue, mandates that any party "that

resells tickets or facilitates the resale or resale auction of

tickets between independent parties by any means" make certain

refund guarantees to purchasers.  The stark contrast in language

---

[1] Established price "means the price fixed at the time of sale by
the operator of any place of entertainment for admission
thereto, which must be printed or endorsed on each ticket of
admission."  N.Y. Arts & Cult. Aff. Law § 25.03(2).

used in consecutive subsections of the statute indicates that the New York Legislature could have imposed an obligation on websites that facilitate the resale (i.e., StubHub) or resale auction (i.e., eBay) of tickets to print face value information on such tickets, but chose not to do so.  Thus, the ACAL § 25.07 claim as to eBay and StubHub fails as a matter of law.  The "operator" regulated by § 25.07 can only be the Yankees.

Plaintiff's claim against the Yankees is legally deficient as well.  Plaintiff concedes that tickets purchased directly from the online box office, issued by Ticketmaster on behalf of the Yankees, reflect their face value.  (Am. Compl. ¶ 61). Thus, the Yankees' direct sales comply with § 25.07.  Plaintiff argues that the Yankees' obligation under § 25.07 to ensure that "each such ticket" includes its face value applies not only to direct sales but also to resales on the secondary ticket market. Plaintiff's theory is that the Yankees are liable for StubHub's failure to include face value information on electronically reissued tickets.

This interpretation is untenable in light of the language of the statute as well as the realities of the secondary ticket market.  The Court cannot conclude that the Legislature meant to impose an ongoing duty on operators to ensure that every resold ticket includes face value information where the statute singles out only one area of the secondary ticket market – resale

auctions conducted by the operator or its agent – to subject to
the requirements of § 25.07.  Moreover, even for those resale
auctions that are undoubtedly regulated by ACAL § 25.07, an
operator need not ensure that resold tickets include face value
information; instead, the operator must print on those tickets
their "final auction price," which could be higher or lower than
the established price.  The broad duty Plaintiff seeks to impose
on operators such as the Yankees finds no support in the text of
§ 25.07.

Nor is such a duty in any way enforceable.  ACAL § 25.07
requires operators to print the final auction price on tickets
only where the operator itself or its agent conducts the auction
– in other words, only where the operator retains some control
over the tickets such that complying with the statute would be
feasible.  Under Plaintiff's reading of the statute, the Yankees
would be liable any time a scalper standing on a street corner
sells a ticket with altered or no established price information.
There is simply no way the Yankees can police each and every
third party ticket sale to ensure that the final purchaser
receives the ticket in the same form, and with the same face
value information, as when it was originally issued by the
Yankees.

Although they cannot monitor all sales on the secondary
market, Plaintiff argues that the Yankees are liable for

StubHub's failure to print face value information on electronically reissued tickets by virtue of their 2007 business arrangement.  Setting to one side the fact that the statute only regulates resale auctions, which neither the Yankees nor StubHub conduct, ACAL § 25.07 requires an operator's oversight of third party sales by the operator's agent.  Here, there are no factual allegations establishing an agency relationship between the Yankees and StubHub.  Under New York law, an agency relationship "results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 122 (2d Cir. 2001) (internal quotation omitted).  StubHub does not sell tickets on behalf of the Yankees, it is a platform for third party owners to resell tickets.  Although the 2007 agreement gives StubHub the ability to reissue tickets electronically, StubHub performs this service on behalf of the third party ticket seller, not the Yankees; the Yankees do not own or control the tickets that are sold on the secondary ticket market.  Finally, there is no allegation that the Yankees have anything to do with the pricing or supply of tickets on StubHub, or that they exercise control over StubHub in any way.  The Amended Complaint does not set forth any factual basis on which

the Court can hold the Yankees liable for tickets lacking face value information that are sold on the StubHub website.

Plaintiff attempts to salvage this claim by arguing that ACAL article 25 as a whole was intended to regulate the secondary ticket market.  This is certainly one goal of the statute, but that goal does not override the unambiguous language of § 25.07.  Additionally, Plaintiff argues that Defendants do not print the face value on resold electronic tickets "because they do not want consumers to know the Established Price as it would have a negative effect upon ticket sales."  (Opp. at 11).  First, Plaintiff offers no explanation as to how knowledge that the StubHub list price is higher than face value would negatively affect the desirability of tickets, particularly tickets to a sold out game or home game against the Red Sox.  More importantly, however, the Court cannot rewrite a statute because Plaintiff attributes improper motives to Defendant's actions; the reasons for omitting the face value on reissued electronic tickets are simply irrelevant in light of clear statutory authority to so do.  An operator's obligation under ACAL § 25.07 with respect to secondary ticket sales is to ensure that tickets sold by the operator or its agent in a resale auction reflect the final auction price.  As Plaintiff did not purchase tickets directly from the Yankees or in a

resale auction held by the Yankees or its agent, the Amended
Complaint fails to state a claim against the Yankees.

## 2.   ACAL § 25.13

New York law requires certain ticket resellers to obtain
licenses to operate their businesses.  N.Y. Arts & Cult. Aff.
Law § 25.13.  Violation of the licensing requirement is
punishable as misdemeanor ticket speculation.  N.Y. Arts & Cult.
Aff. Law § 25.09.  The ACAL exempts certain websites from its
licensing requirements:

> Any operator or manager of a website that serves as a
> platform to facilitate resale, or resale by way of a
> competitive bidding process, solely between third
> parties and does not in any other manner engage in
> resales of tickets to places of entertainment shall be
> exempt from the licensing requirements of this
> section.

N.Y. Arts & Cult. Aff. Law § 25.13(1).  Plaintiff acknowledges
that this exemption applies to eBay and StubHub.  (Am. Compl. ¶
19). In an attempt to circumvent this statutory exemption,
Plaintiff asks the Court to recognize derivative liability with
respect to eBay and StubHub for intentionally aiding and
abetting unlicensed ticket resellers (like the John Doe
Defendant) by providing them with a platform to anonymously sell
tickets.

The very nature of StubHub and eBay's business is to aid
and abet third party ticket sales by sellers who are most likely
unlicensed.  The Legislature was well aware of this fact, as it

singled out websites that "facilitate" third party ticket sales in the text of the statute itself.  If the Legislature wished to regulate eBay and StubHub's conduct, it could have simply required the companies to obtain reseller licenses for themselves.  In light of its specific choice not to impose such restrictions on eBay and StubHub's businesses, the Court cannot conclude that the Legislature would intend for the ACAL to nonetheless trap Defendants in a net of derivative liability based on their users' actions.  To recognize this sort of backdoor aiding and abetting claim would be to write the eBay/StubHub exemption out of ACAL § 25.13 entirely.  Aiding and abetting an ACAL violation is not cognizable against Defendants eBay and StubHub as a matter of law.  Moreover, with respect to the anonymity of StubHub's marketplace, even if the aiding and abetting theory were legally viable, Plaintiff cannot point to any provision of New York law that requires ticket resellers, licensed or not, to disclose their identities.  As Defendants eBay and StubHub are exempt from the requirements of § 25.13, Plaintiff's claim fails as a matter of law.  As there is no allegation that the Yankees resell tickets or aid and abet the resale of their tickets, the § 25.13 claim against the Yankees fails as well.

### 3.   ACAL § 25.23

Finally, the ACAL specifies that:

> In every principal office or branch office, bureau,
> agency or sub-agency of any licensee under this
> article, there shall be conspicuously posted and at
> all times displayed a price list showing the
> established price charged by the operator of the place
> of entertainment for which a ticket is being sold by
> such licensee, together with the price being charged
> by such licensee for the resale of such ticket, so
> that all persons visiting such place may readily see
> the same. . . .  Further, if the licensee conducts
> business through the use of the internet, the same
> price list, or hyperlink to the same, shall be
> conspicuously displayed on the internet page on which
> tickets are accessed.

N.Y. Arts & Cult. Aff. Law § 25.23.  Plaintiff alleges that
StubHub aids ticket resellers in violating this statute by "not
allowing a ticket reseller [to] post the face value or a
hyperlink to the face value at the time of sale." (Am. Compl. ¶
58).

Section 25.23 on its face only applies to "licensees." As
Plaintiff concedes that eBay and StubHub are exempt from the
licensing requirements of ACAL § 25.13, these Defendants are not
licensees.  To end-run this exemption, Plaintiff again resorts
to an aiding and abetting theory.  But, as explained above,
aiding and abetting is not legally cognizable in light of the
Legislature's determination not to regulate eBay and StubHub's
ticket resale businesses.  Again, as the Yankees do not resell
their own tickets or aid and abet ticket resellers in hiding
price lists, they can have no liability under § 25.23.

14

In conclusion, none of the above-cited ACAL sections regulate Defendants' participation in the sale of Yankees tickets on the secondary ticket market. Furthermore, Plaintiff's attempt to avoid the plain language of the ACAL with an aiding and abetting theory of liability fails as a matter of law. Thus, Defendants' motion to dismiss the ACAL claim is granted. Having determined that the Amended Complaint fails to state a claim against any of the Defendants, the Court need not reach the issue of Defendants' immunity under the Communications Decency Act, 47 U.S.C. § 230(c)(1).

**C.   New York General Business Law Deceptive Practices Claim**

New York's General Business Law ("GBL") makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 744 (N.Y. 1995)). New York courts apply an objective definition of deceptive acts and practices, concerned only with "those likely to mislead a reasonable consumer acting reasonably under the

15

circumstances." <u>Oswego Laborers' Local</u>, 647 N.E.2d at 745.
"There can be no claim for deceptive acts or practices, however,
when the alleged deceptive practice was fully disclosed."
<u>Chiste v. Hotels.com L.P.</u>, 756 F. Supp. 2d 382, 404 (S.D.N.Y.
2010) (internal quotation omitted).

The Amended Complaint alleges that Defendants violate GBL §
349 by aiding and abetting anonymous third parties in reselling
tickets (1) without a license and (2) without disclosing the
face value of the tickets for resale.   Thus, the deceptive
practices claim is predicated on violations of the ACAL.   Having
determined that the ACAL does not prohibit such conduct, it is
difficult to understand how Defendants' business practices are
deceptive.

Plaintiff argues that because the Yankees website links to
StubHub, and StubHub sellers are anonymous, "the least
sophisticated consumer . . . would likely assume that [she is]
purchasing tickets directly from the Yankees." (Opp. at 21).
However, the applicable legal standard is whether a reasonable
consumer, not the least sophisticated consumer, would be misled
by Defendants' actions.   Plaintiff alleges that she went to the
Yankees website and followed a hyperlink to the StubHub website.
In so doing, she left the Yankees website and was redirected to
an entirely new website with a different URL.   That website
lists for sale tickets to numerous non-Yankees events, including

16

music concerts, the circus, NASCAR races, and other Major League
Baseball games.  Plaintiff's own ticket was printed from the URL
"myaccount.stubhub.com" and includes both a StubHub customer
number and a StubHub confirmation number.  (Am. Compl., Ex. A).
Tellingly, Plaintiff does not allege that she personally
believed she was purchasing tickets directly from the Yankees
online box office or that she did not understand that StubHub is
an online marketplace for the resale of tickets by other fans.
Iqbal directs the Court to apply its common sense when
determining the plausibility of a claim – common sense dictates
that no reasonable consumer could plausibly think that StubHub
tickets come directly from the Yankees when faced with
overwhelming evidence to the contrary.

Plaintiff further argues that StubHub's failure to print
the face value on resold tickets only reinforces the
misconception that the tickets were sold by the Yankees.  If a
consumer believes that she is buying directly from a vendor, she
may not realize that the StubHub price can be higher than the
established price of the tickets.  Plaintiff acknowledges that
StubHub operates in the secondary ticket market.  In order for
StubHub's failure to print the face value on a reissued ticket
to be deceptive, a buyer would have to believe that a reseller
in possession of a limited resource (which is likely not
available directly from the vendor) does not charge a premium

17

for her goods.  This line of reasoning "attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable under G.B.L. § 349." Chiste, 756 F. Supp. 2d at 404-05 (dismissing claim that Hotels.com's failure to disclose the fact that it made a profit on each reservation booked on its website was deceptive because "[a]ny reasonable consumer would understand that businesses are in business to make a profit").  Like any reasonable consumer, Plaintiff knew she was purchasing tickets on the secondary market.  The John Doe StubHub seller quoted her $33 per ticket, which is exactly what she paid.  The face value of tickets in each section of Yankee Stadium is publically available on the Yankees website, and, as Plaintiff knew the section and row of the tickets for sale on StubHub, she could have compared the StubHub price to the face value with no difficulty.  Plaintiff simply has not pleaded any deceptive act by any of the three Defendants.

Furthermore, Plaintiff concedes that StubHub's website warns customers of the exact facts she claims were obscured by Defendants' failure to print face value information on her tickets.  Every single page of the website to which Plaintiff was redirected included a disclaimer that "You are buying tickets from a third party; neither StubHub.com nor StubHub, Inc. is the ticket seller." See Declaration of Eric Hochstadt, Exs. 10-16.  Similarly, every page on StubHub's website includes

18

a disclaimer that "Ticket prices are set by sellers and may differ from face value." Id. While not dispositive, these disclosures belie any claim of deception.

Additionally, Plaintiff has pleaded no facts establishing that Defendants' allegedly deceptive acts caused any injury. The Amended Complaint sets forth two alleged injuries: (1) lack of information about pricing; and (2) that consumers are "forced" to pay higher ticket prices because the sellers are anonymous and the reissued tickets do not reflect their face value. (Am. Compl. ¶¶ 63-64, 73). Lack of information is not an injury, it is the factual underpinning of the GBL § 349 claim. As to higher prices, Plaintiff was evidently willing to pay $33 per ticket to see the Yankees. There is no claim that she would not have made the purchase had she known that the StubHub tickets were $13 more expensive than the tickets she attempted but was unable to purchase directly from the Yankees. Similarly, there is no claim that Plaintiff would not have made the purchase had StubHub disclosed the identity of the John Doe seller. Finally, there is no conceivable explanation as to how seller anonymity or the fact that electronic tickets do not include face value "forces" consumers to overpay for tickets. Bad seats, last minute listings, or tickets to unpopular games may sell on StubHub for less than face value. If sellers using StubHub's website successfully charge prices above face value,

they can do so because of the law of supply and demand, not because StubHub allegedly withholds price information from consumers.  As Plaintiff has pleaded neither a material deception nor an injury, the GBL § 349 claim is dismissed.

### D.   Motion to Amend

At oral argument on this motion on June 3, 2011, Plaintiff's counsel informed the Court that he intended to seek leave to file a second Amended Complaint in order to make two material changes to the first Amended Complaint.  Rule 15(a)(2) of the Federal Rules of Civil Procedure specifies that after a party has amended a pleading once as of right, future amendments may only be permitted on consent or by leave of court.  Although "[t]he Court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" the Court may deny a motion to amend.  Foman v. Davis, 371 U.S. 178, 182 (1962).

First, whereas paragraph 19 of the first Amended Complaint conceded that eBay and StubHub were exempt from the licensing requirements of ACAL § 25.13, Plaintiff proposes to amend paragraph 19 to allege that "ACAL § 25.13 requires the licensing of ticket brokers, but provides an exemption for internet

20

websites such as eBay and StubHub generally.  However, that
exemption does not apply to the sale of Yankees tickets because
StubHub does more than merely provide a location that
facilitates the sale of tickets by third parties."  June 3, 2011
Oral Argument Tr. at 5:11-16.  Thus, Plaintiff wishes to reverse
course and argue that StubHub is not exempt from § 25.13's
licensing requirement because it has the ability to reissue
electronic tickets.  There is no room in the statutory exemption
for the distinction Plaintiff proposes.  StubHub's ability to
reissue Yankees tickets does not transform it from a "platform
to facilitate resale . . . solely between third parties" to a
corporation that "engage[s] in the business of reselling any
tickets to a place of entertainment."  ACAL § 25.13(1).  StubHub
does not own or sell the Yankees tickets that it electronically
reissues, nor does it set resale prices.  It simply offers an
additional service as part of its role as a facilitator of third
party ticket sales.  As indicated by the unequivocal language of
the statute, StubHub is not required to obtain a reseller
license.  Plaintiff's proposed amendment to paragraph 19 would
be futile because it cannot circumvent the statutory exemption.

Second, Plaintiff proposes to expand on the allegations of
injury under GBL § 349.  Specifically, Plaintiff would amend
paragraph 63 of the Amended Complaint to state that the failure
to alert consumers when the StubHub list price is higher than

face value "artificially creates demand for tickets in the secondary market that has the effect of raising the price of the tickets in the secondary market." June 3, 2011 Oral Argument Tr. at 6:19-25. This allegation is as opaque as the current explanation of injury. Moreover, even accepting as true the dubious proposition that StubHub's failure to provide face value information "forces" customers to overpay for tickets, Plaintiff still has not pleaded any deception. Any reasonable consumer who knowingly goes to the secondary market for tickets would understand the possibility that she may have to pay more than face value to purchase tickets that are not available directly from the vendor. The consumer can compare the StubHub ticket price against the face value of the ticket published on the Yankees website. If a consumer is forced to pay more than face value for a Yankees ticket, it is due to the economic forces of supply and demand, not StubHub's business practices. Plaintiff's clarification of her theory of injury under GBL § 349 would not save the claim from dismissal and is therefore futile. There is no need to embark on costly and time intensive briefing of a motion to amend because neither proposed amendment would overcome the Amended Complaint's legal defects. The Plaintiff has struck out.

### III.     Conclusion

Defendants' motion to dismiss the Amended Complaint is granted in all respects.  As no additional factual allegations can remedy the legal defects discussed herein, the Amended Complaint is dismissed with prejudice.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:     New York, New York
           June 27, 2011

                                    John F. Keenan
                              United States District Judge

23